RAILWAY LABOR EXECUTIVES ASSO-CIATION, an unincorporated association, Frank Carthy, R. W. Kroll, W. A. Stymus, F. E. Holden, R. M. Hester, J. R. Bond, W. Comstock, and P. I. Jensen, on their own behalf and on the behalf of all others similarly situated, Plaintiffs-Appellants,

v.

The ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Defendant-Appellee.

No. 23908.

United States Court of Appeals, Ninth Circuit.

June 23, 1970.

Rehearing Denied July 21, 1970.

William G. Mahoney (argued), of Mulholland, Hickey & Lyman, Washington, D. C., George E. Bodle, of Bodle, Fogel, Julber & Reinhardt, Los Angeles, Cal., for appellant.

Robert B. Curtiss, (argued), of John J. Balluff, Robert A. Feldman, Los Angeles, Cal., C. George Niebank, Jr., and Richard K. Knowlton, Chicago, Ill., for appellee.

Before ELY and WRIGHT, Circuit Judges, and JAMESON,* District Judge.

EUGENE A. WRIGHT, Circuit Judge:

Appellant railway employees seek damages for loss of work resulting from the discontinuance of four interstate trains by their employer. They allege that the discontinuance did not comply with the procedures set out in Section 13a of the Interstate Commerce Act, 72 Stat. 571

---

\* Honorable William J. Jameson, United States Senior District Judge, Billings, Montana, sitting by designation.

(1958), 49 U.S.C. § 13a (1964).[1] Without determining its lawfulness, we affirm the judgment of the district court, holding that this dispute between the railroad and its employees is properly cognizable by the National Railroad Adjustment Board under provisions of the Railway Labor Act, 45 U.S.C. §§ 151–162.

On October 10, 1967, the defendant railroad filed with the Interstate Commerce Commission a statement of its intention to discontinue service on two trains running between Chicago and Los Angeles and two others running between Kansas City, Missouri, and Gallup, New Mexico. As required by Section 13a, notices were posted in the affected stations advising the public that operations would cease at midnight on November 10, 1967.

But on October 19, 1967, when the Interstate Commerce Commission notified the railroad that it would not investigate, and hence would not oppose, the proposed discontinuances, the railroad immediately cancelled the trains involved, twenty days prior to the date stated in the posted notices. Attempts by the plaintiff union to have the ICC restore the service proved unsuccessful and this class action was brought on behalf of the displaced employees. As amended, the complaint sought compensatory and punitive damages for the affected employees caused by the premature discontinuance. The district court denied relief.

It is conceded that this dispute is between a railroad and its employees, and that the two are linked by collective bargaining agreements. It is also undisputed that this is a "minor dispute" in the sense that "the claim is to rights accrued, not merely to have new ones created for the future." Elgin, Joliet & Eastern Ry. Co. v. Burley, 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945).

Hence, the narrow question before us is whether the quarrel is one "growing out of grievances or out of the interpretation or application of [existing] agreements." If so, it must go first to conference and negotiation and, failing that, to possible arbitration before the National Railroad Adjustment Board. Railway Labor Act § 3, First (i), 45 U.S.C. § 153, First (i). The statutory grievance procedure, if applicable, is mandatory and exclusive and deprives us of the primary jurisdiction to resolve the disputed questions. Brotherhood of Locomotive Engineers v. Louisville & Nashville R. R., 373 U.S. 33, 38, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963).

The jurisdiction of the Adjustment Board is not limited to disputes arising from provisions specifically included in a collective bargaining agreement. If the claim is founded upon some incident of the employment relationship, or an asserted one, the Board may determine the meaning and effect of the provisions of the collective agreement with reference either to an included or to an omitted case. Elgin, Joliet & Eastern Ry. Co. v. Burley, supra, 325 U.S. at 723, 65 S.Ct. 1282.

Here the collective agreements make no specific provision for the payment of wages following discontinuance of a train. However, nothing in the agreements exclude such protection for the affected employees. Whether such a provision was omitted because the parties relied on the language of the Interstate Commerce Act, the "usage, custom, and practice" of the industry, or whether it was rejected following negotiation does not appear in the record and is a matter requiring the expertise of the Adjustment Board. Order of Ry. Conductors of America v. Pitney, 326

---

1. Section 13a, in brief, permits a railway carrier, desirous of discontinuing an interstate train route, to avoid the jurisdiction of state laws and regulatory agencies by filing a 30-day notice with, and securing the approval of, the Interstate Commerce Commission. The section also requires the posting of a notice of the proposed discontinuance in facilities served by the train "at least thirty days in advance of any such proposed discontinuance or change."

U.S. 561, 567, 66 S.Ct. 322, 90 L.Ed. 318 (1946). *See* also Transportation-Communication Employees Union v. Union Pacific R. R., 385 U.S. 157, 160–161, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966); Gunther v. San Diego & Arizona Eastern Ry., 382 U.S. 257, 260–262, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965). *Cf.*, Cox, The Legal Nature of Collective Bargaining Agreements, 57 Mich.L.Rev. 1 (1958).

A similar situation was presented in Missouri-Kansas-Texas R. R. Co. v. Brotherhood of Railroad Trainmen, 342 F.2d 298 (5th Cir. 1965). The Brotherhood called a strike over the Railroad's failure to correct hazardous and unsafe conditions. The court held that the dispute was properly referrable to the Adjustment Board despite the silence of the collective bargaining agreement as to any terms governing unsafe working conditions.

The employees seek to characterize this action as a "tort action" for violation of a statutory duty and, therefore, not referrable to the Adjustment Board. But the provisions of the Railway Labor Act relate to matters of substance, not form. *See* Switchmen's Union of North America A.F.L.–C.I.O. v. Southern Pacific Co., 398 F.2d 443, 447 (9th Cir. 1968). Where, as here, the dispute grows out of the employment relationship and, in the final analysis, involves an attempt to impose a right which is incident to that relationship, the statutory forum is the Adjustment Board, absent a clear expression of legislative policy to the contrary.

We do not think that the policies behind enforcement of Section 13a of the Interstate Commerce Act were intended to outweigh the single forum provisions of the Railway Labor Act. *Cf.* Moe v. Eastern Air Lines, Inc., 246 F.2d 215 (5th Cir. 1957). Insofar as displaced employees are concerned, it is, at best, conjectural that Congress intended to confer upon them additional labor security rights independent of the collective bargaining agreement. And to hold that a railroad employer-employee dispute over rights asserted under the Interstate Commerce Act is outside the provisions of the Railway Labor Act would be directly contrary to the holding in Order of Railroad Telegraphers v. Chicago & North Western Ry., 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774 (1960).

In *Railroad Telegraphers* the employer sought to avoid application of the Railway Labor Act by contending that the discontinuance of railroad stations was entrusted, by law, to state agencies. Required bargaining over job security, it was alleged, would subvert the authority of those agencies and would be contrary to transportation policies of the Interstate Commerce Act. The Court rejected these contentions, holding that the security, seniority, and stability of railroad jobs were proper subjects of collective bargaining.

It is true, as the employees contend, that the effect of our holding may require, to some degree, the interpretation of Section 13a by the Adjustment Board. But it will also involve the interpretation of much more, including past bargaining history, current industry practices, and the effect of the ruling upon future bargaining in the industry as a whole. These are matters entrusted to the Arbitration Board and we conclude that the district court correctly dismissed the suit for the employees' failure to exhaust those procedures.

Affirmed.

ELY, Circuit Judge (concurring):

While I concur in the majority opinion, I note my disapproval of the appellee's noncompliance with section 13a of the Interstate Commerce Act. Choosing to effectuate discontinuance of its service under federal procedure, it bypassed state laws which would have imposed a longer delay than the relatively short period prescribed by Congress. Having thus invoked the federal law to its advantage, it should not, in my judgment, have terminated the service short of the expiration of the time prescribed by the federal statute. I think it clear

that the appellee disregarded the law, and had relief been sought by parties to whom another avenue was unavailable, the appellee's position would hardly be supportable.