**James W. LEU, et al., Individually and as Representative of a Class, Plaintiffs-Appellants,**

v.

**NORFOLK & WESTERN RAILWAY COMPANY, Defendant-Appellee.**

No. 86–1377.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1986.

Decided May 8, 1987.

Randolph E. Schum, Blunt & Schum, Edwardsville, Ill., for plaintiffs-appellants.

James S. Whitehead, Sidley & Austin, Chicago, Ill., for defendant-appellee.

Before WOOD, COFFEY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This action is before the court pursuant to 28 U.S.C. § 1291 as an appeal of a final judgment of the United States District Court for the Southern District of Illinois. On February 6, 1986, the district court granted the defendant's motion to dismiss the plaintiffs' second amended complaint, and plaintiffs' appeal. The complaint was dismissed under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and, alternatively, dismissed with prejudice under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. For the reasons set forth in this opinion, we affirm the district court's dismissal of the action for lack of subject matter jurisdiction.

I

Background

A. *The Complaint*

Appellants are former employees of the appellee, Norfolk and Western Railway Company (N & W). They sustained personal injuries while on-duty with the railroad and either agreed to monetary settlements or received payments in satisfaction of judgments against N & W under the Federal Employers' Liability Act (FELA) on or after March 1, 1961.

In their complaint in this litigation, appellants alleged that N & W fraudulently reduced the settlement funds by deducting a lien asserted against N & W by the Wabash Memorial Hospital Association (WMHA) for medical services provided by WMHA to appellants in connection with the injuries. The former employees asserted that the railroad had a lawful responsibility to pay the hospital bills and that, because of the deduction of the alleged WMHA lien, they were deprived of funds to which they were entitled. In the second amended complaint,[1] upon which this appeal is premised, this contention is expressed in two causes of action, one alleging fraud,[2] the other alleging conversion.[3]

B. *The Decision of the District Court*

The district court dismissed appellants' second amended complaint for lack of subject matter jurisdiction. It reasoned that "the sole source of this alleged 'responsibility' [to pay medical expenses] was the provisions of the collective bargaining agreements between N & W and Plaintiffs' rail unions entered into under the auspices of the Railway Labor Act." *Leu v. Norfolk & W. Ry.*, No. 85 5172, mem. op. at 2 (S.D.Ill. Feb. 6, 1986) [hereinafter cited as Mem. op.]; R. 19 at 2.[4] The court ruled that

1. The second amended complaint was filed with the district court on October 7, 1985. The original complaint was filed on February 7, 1985. Appellants voluntarily amended their original complaint with leave of the court on April 24, 1985 while a motion to dismiss was pending. Plaintiff's first amended complaint was dismissed on September 6, 1985 with permission to further amend the complaint.

2. Count I:

that N & W engaged in fraudulent conduct "to avoid its lawful responsibility" to pay the medical expenses incurred by Plaintiffs as a result of on-duty physical injuries when N & W informed Plaintiffs, who were all represented by counsel in pressing their claims under the Federal Employers Liability Act ("FELA"), that N & W was required to, and in fact would, deduct from the gross proceeds of Plaintiffs' FELA settlements the amount of a lien served upon it by the Wabash Memorial Hospital Association ("WMHA"), to which Plaintiffs belonged.

*Leu v. Norfolk & W. Ry.*, No. 85 5172, mem. op. at 1–2 (S.D.Ill. Feb. 6, 1986) [hereinafter cited as Mem. op.]; R. 19 at 1–2.

3. Count II: "that N & W, as a result of honoring the aforementioned WMHA lien and deducting the amount of the lien from the FELA settlements, 'maliciously and with full knowledge of the wrongful nature of its acts converted the funds of Plaintiffs to its own use.'" Mem. op. at 2; R. 19 at 2.

4. The district court noted that, although the second amended complaint did not identify "the source of the alleged 'responsibility' that N & W violated in honoring the WMHA lien, a review of the prior complaints ... discloses, and counsel for the Plaintiffs acknowledged at oral argument, that the sole source of this alleged 'responsibility' was the provisions of the collective bargaining agreements between N & W and Plaintiffs' rail unions entered into under the auspices of the Railway Labor Act, 45 U.S.C. Sec. 151 *et seq.*" Mem. op. at 2; R. 19 at 2.

"state law tort claims that are inextricably intertwined with the interpretation of collective bargaining agreements in the railroad or airline industry are preempted because Congress has vested exclusvie [sic] jurisdiction to interpret such agreements in the National Railroad Adjustment Board ("NRAB") under Section 3 of the RLA." *Id.* at 3. Thus, the court held that it was deprived of subject matter jurisdiction over the claims because resolution of the claims "would be substantially dependent upon [its] analysis of the terms of the N & W collective bargaining agreements." *Id.* at 4.

The district court then rejected the appellants' arguments that the court should entertain their claims despite the preemption of their tort claims. Appellants had argued that any claim they might have under the collective bargaining agreement or section 3 of the Railway Labor Act (RLA) would be time-barred. The court answered that "[p]laintiffs' failure to pursue their contract remedies in the proper forum in a timely fashion cannot somehow imbue this Court with subject matter jurisdiction it otherwise lacks." *Id.* at 5. Appellants also had argued that they were unable to pursue their contract remedies under the RLA because they had resigned their employment with N & W. To this argument the court responded, "Former railroad employees not only are able but in fact are required to pursue any claims they might have arising out of a collective bargaining agreement through the exclusive 'minor dispute' resolution process set forth in Section 3 of the RLA." *Id.* at 6.

As an alternate basis for its holding, the court then dismissed the fraud and conversion causes of action with prejudice for failure to state a claim. The court relied on the requirement of Fed.R.Civ.P. 9(b) that in all averments of fraud, the circumstances constituting fraud "shall be stated with particularity." The court held that appellants' "conclusory, non-specific allegations of fraud against N & W do not contain the requisite particularity." *Id.* at 8. The court also held that appellants' action for conversion could not be maintained because it was essentially a claim for the deprivation of property as a result of an alleged breach of contract. *Id.* at 9.

## II

### Discussion

Appellants raise two issues on appeal. The first issue is whether the district court erred as a matter of law in holding that it is deprived of subject matter jurisdiction to hear appellants' state law tort claims by the Railway Labor Act § 3, 45 U.S.C. § 153. The second issue, focusing on the district court's alternative holding, is whether the district court erred in dismissing the appellants' second amended complaint for failure to state claims for fraud and conversion. Because we affirm the district court's dismissal of the appellants' second amended complaint for lack of subject matter jurisdiction, it is unnecessary to consider the alternative ground for dismissal.

### A. The Railway Labor Act

The Railway Labor Act was enacted by Congress to promote stability in labor-management relations in the railroad industry. *Union Pac. R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).[5] As a means of effectuating that purpose, the RLA provides for mandatory administrative grievance procedures and

---

5. The "General purposes" section of the Railway Labor Act (RLA) provides:

The purposes of the chapter are: (1) To avoid any interruption to commerce or to the operation of any carrier engaged therein; (2) to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization; (3) to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter; (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

45 U.S.C. § 151a.

remedies [6] for "minor disputes" [7] arising from the employment relationship between a railroad employee and the carrier.[8] *See Andrews v. Louisville & N. R.R.,* 406 U.S. 320, 322–23, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972); *Graf v. Elgin, J. & E. Ry.,* 790 F.2d 1341 (7th Cir.1986); *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045 (7th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984). This federal administrative remedy is exclusive, *Jackson,* 717 F.2d at 1049 (citing *Andrews,* 406 U.S. at 325, 92 S.Ct. at 1565); *see Graf,* 790 F.2d at 1348, and RLA preemption divests the state and federal courts of subject matter jurisdiction over "minor disputes." *Jackson,* 717 F.2d at 1057. "The several decisions of [the Supreme] Court interpreting § 3 First [of the RLA] have made it clear that this statutory grievance procedure is a mandatory, exclusive, and comprehensive system for resolving grievance disputes." *Brotherhood of Locomotive Eng'rs v. Louisville & N. R.R.,* 373 U.S. 33, 38, 83 S.Ct. 1059, 1062, 10 L.Ed.2d 172 (1963); *see also Andrews,* 406 U.S. at 322, 92 S.Ct. at 1564 (citing *Brotherhood of R.R. Trainmen v. Chicago R. & I. R.R.,* 353 U.S. 30, 39, 77 S.Ct. 635, 639, 1 L.Ed.2d 622 (1957) and *Walker v. Southern Ry.,* 385 U.S. 196, 198, 87 S.Ct. 365, 366, 17 L.Ed.2d 294 (1966)). "In enacting this legislation, Congress endeavored to promote stability in labor-management relations in this important national industry by providing effective and efficient remedies for the resolution of railroad- employee disputes arising out of the interpretation of collective-bargaining agreements.... Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts." *Sheehan,* 439 U.S. at 94, 99 S.Ct. at 402; *see also Slocum v. Delaware, L. & W. R.R.,* 339 U.S. 239, 243, 70 S.Ct. 577, 579, 94 L.Ed. 795 (1950) ("The Act thus represents a considered effort on the part of Congress to provide effective and desirable administrative remedies for adjustment of railroad-employee disputes growing out of the interpretation of existing agreements."). Thus, as this court has recognized, "the [National

6. This court has noted:

> The Railway Labor Act establishes a scheme of compulsory arbitration for so-called minor disputes, which include disputes over an individual's job rights.... Although the Act itself uses the word "arbitration" to refer to an alternative mode of dispute settlement that the parties may elect under 45 U.S.C. § 157 ... the procedure that the Act creates for parties who ... do not make that election is, in fact though not in name, arbitration, too.... The tribunal, although grandly styled the National Railroad Adjustment Board, in fact consists of private individuals chosen by the railroad industry and the railroad unions.

*Elmore v. Chicago & Ill. Midland Ry.,* 782 F.2d 94, 95 (7th Cir.1986) (citations omitted).

7. A "minor dispute" under the RLA has been interpreted as one involving the interpretation or application of an existing collective bargaining agreement. The Ninth Circuit explained:

> Minor disputes contemplate the existence of a collective agreement or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case.

*Switchmen's Union of N. Am. v. Southern Pac. Co.,* 398 F.2d 443, 445 (9th Cir.1968); *see Elgin, J. & E. Ry. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945). "When the position of either side in a controversy between a railroad company and a union representing some of its employees goes no further than to put in bona fide issue the interpretation of an existing contract, only a minor dispute is involved." *Switchmen's Union,* 398 F.2d at 446. "[W]here the position of one or both of the parties is expressly and arguably predicated on the terms of the agreement, as illuminated by longstanding practices, the question of whether the position is well taken involves a minor dispute." *Id.* at 447.

8. The relevant portion of the Railway Labor Act is codified at 45 U.S.C. § 153 First. Subsection (i) provides:

> (i) The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ... shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition ... to the appropriate division of the [National Railway] Adjustment Board....

Section 153 First was added to the RLA as section 3 First by the 1934 Amendments, 48 Stat. 1185, 1189 (1934).

Railway Adjustment Board] has exclusive jurisdiction over disputes involving contractual interpretation of collective bargaining agreements between carriers and their employees." *Choate v. Louisville & N. R.R.,* 715 F.2d 369, 372 (7th Cir.1983).

We have consistently held that the RLA completely preempts state law tort claims by railroad employees against carriers when adjudication of the cause of action involves interpretation of the collective bargaining agreement. *Jackson,* 717 F.2d 1045; *accord Lewy v. Southern Pac. Transp. Co.,* 799 F.2d 1281 (9th Cir.1986). In *Jackson,* we stated that "the RLA has made *any* grievance arising out of the collective bargaining agreement subject to the exclusive arbitral remedies contained in that Act." 717 F.2d at 1052. "Where the worker is covered by a collective bargaining contract and therefore has a potential federal remedy, judicial or arbitrable, the cases hold that that remedy is exclusive; the worker has no state remedies." *Graf,* 790 F.2d at 1346.

### B. *Preemption Analysis*

#### 1.

The appellants contend that preemption of their state law fraud and conversion claims by the RLA should not apply in this case because the railroad's obligation to pay the medical expenses of its injured employees does not arise from a provision of any collective bargaining agreement. Rather, the obligation arose "by course and practice in FELA litigation to pay those bills." Appellants' Br. at 9. Consequently, argue the appellants, adjudication of the claims does not require the interpretation of a collective bargaining agreement. However, we agree with the district court that, if the railroad has a responsibility to pay the medical bills of injured employees pursuing FELA claims, that responsibility arises from the collective bargaining agreement as an incident of the employment relationship. Even if the alleged responsibility of the carrier to pay medical expenses arises from a "course and practice" of the carrier rather than from a specific provision of a collective bargaining agreement, the question of whether that responsibility exists at all requires an interpretation of the collective bargaining agreement. *See Railway Express Agency, Inc. v. Brotherhood of Ry., Airline & S.S. Clerks, Freight Handlers,* 437 F.2d 388, 392 (5th Cir.), *cert. denied,* 403 U.S. 919, 91 S.Ct. 2230, 29 L.Ed.2d 696 (1971); *Switchmen's Union of N. Am. v. Southern Pac. Co.,* 398 F.2d 443, 447 (9th Cir.1968). "Where, as here, the dispute grows out of the employment relationship and, in the final analysis, involves an attempt to impose a right which is incident to that relationship, the statutory forum is the Adjustment Board, absent a clear expression of legislative policy to the contrary." *Railway Labor Executives Ass'n v. Atchison, T. & S.F. Ry.,* 430 F.2d 994, 997 (9th Cir.1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). As the Ninth Circuit, citing *Elgin, J. & E. Ry. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886 (1945), has aptly stated:

> The [exclusive] jurisdiction of the Adjustment Board is not limited to disputes arising from provisions specifically included in a collective bargaining agreement. If the claim is founded upon some incident of the employment relationship, or an asserted one, the Board may determine the meaning and effect of the provisions of the collective agreement with reference either to an included or to an omitted case.

*Railroad Labor Executives Ass'n,* 430 F.2d at 996.

Therefore, if the alleged responsibility of the railroad to pay medical expenses arises from the "course and practice" of the railroad, adjudication of the claims that the responsibility was fraudulently avoided by the railroad and that the railroad converted the sum of the medical expenses "lawfully" owed to the appellants necessarily requires an interpretation of the collective bargaining agreement in light of the alleged "course and practice." As in *Andrews,* "[t]he existence and extent of such an obligation ... will depend on the interpretation of the collective-bargaining agreement." 406 U.S. at 324, 92 S.Ct. at 1565.

### 2.

The appellants cannot escape the exclusive governance of the RLA by articulating their claim in terms of a state tort action. In *Stephens v. Norfolk & W. Ry.*, 792 F.2d 576 (6th Cir.1986), the Sixth Circuit set forth a useful method for evaluating such claims:

> Employees' attempts to evade NRAB exclusive jurisdiction over minor disputes by recharacterizing their claims into state causes of action are scrutinized by the following test: If the "action is based on a matrix of facts which are inextricably intertwined with the grievance machinery of the collective bargaining agreement and of the R.L.A.," exclusive jurisdiction of the NRAB preempts the action.

*Id.* at 580 (quoting *Magnuson v. Burlington N., Inc.*, 576 F.2d 1367, 1369 (9th Cir.), *cert. denied*, 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978)). Indeed, recently, in *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the Supreme Court expressed a similar approach:

> [Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort.

*Id.* at 211, 105 S.Ct. at 1911.

While *Allis-Chalmers* is an LMRA case, its reasoning is equally applicable to the determination of whether a claim couched in terms of a state law tort actually arises under an RLA collective bargaining agreement.[9] The key inquiry, as correctly identified by the district court, is "whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract. If the state tort law purports to define the meaning of the contract relationship, that law is pre-empted." *Id.* at 213, 105 S.Ct. at 1912. Here, the claims clearly derive from the collective bargaining agreement, even if impliedly so. *See, e.g., Gibson v. AT & T Technologies, Inc.*, 782 F.2d 686, 688 (7th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986) (claim for fraudulent deprivation of layoff allowance held to arise from collective bargaining agreement and thus preempted by Labor Management Relations Act). The fundamental issue underlying the appellants' claim is whether the railroad had a duty to pay the appellants' medical expenses. Resolution of this question "depends upon the terms of the agreement between the parties[.] [It is] tightly bound with questions of contract interpretation that must be left to federal law." *Allis-Chalmers*, 471 U.S. at 216, 105 S.Ct. at 1914. Therefore, as in *Allis-Chalmers*, this case involves "a question of federal contract interpretation whether there was an obligation under this labor contract to provide the payments ..., and, if so, whether [the employer's] conduct breached that implied contract provision." *Id.* at 215, 105 S.Ct. at 1913. Similarly, "[t]he duties imposed and rights established through the state tort thus derive from the rights and obligations established by the contract. That being so, this tort claim is firmly rooted in the expectations of the parties that must be evaluated by federal contract law." *Id.* at 217, 105 S.Ct. at 1914.

Appellants cannot, through "artful pleading," disguise claims that are within the jurisdictional scope of the RLA as state law tort claims for fraud and conversion. *See Schroeder v. Trans World Airlines, Inc.*,

---

**9.** This case presents, therefore, a very different question from that presented in *Atchison T. & S.F. Ry. v. Buell*, —— U.S. ——, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). There, the Supreme Court was presented with another issue: whether the possibility that harassment by fellow workers in the workplace could be subject to arbitration under the RLA as a "minor dispute" precluded an action based on the same conduct under *another federal statute*, the Federal Employers' Liability Act (FELA). The Court held that, "absent an intolerable conflict between the two statutes," *id.* 107 S.Ct. at 1416, it was unwilling to read the RLA "as repealing any part of the FELA." *Id.* at 1417. Here, of course, we need not harmonize two federal statutory schemes. Moreover, we note that the underlying conduct at issue here is certainly far more inextricably related to the collective bargaining relationship than the claim at issue in *Buell*.

702 F.2d 189, 191 (9th Cir.1983) ("Artful pleading by the plaintiff will not be allowed to conceal the true nature of the complaint."); *Magnuson,* 576 F.2d at 1369 ("Artful pleading cannot conceal the reality that the gravamen of the complaint is wrongful discharge."); *De la Rosa Sanchez v. Eastern Airlines, Inc.,* 574 F.2d 29, 32 (1st Cir.1978). The courts have correctly viewed such attempts as "end runs around the Railway Labor Act's policy of channeling employment disputes to arbitration." *Lancaster v. Norfolk & W. Ry.,* 773 F.2d 807, 815 (7th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987); *see De la Rosa Sanchez,* 574 F.2d at 32 ("Plaintiff here seeks to make an end-run around the jurisdictional scope of [the] RLA by the use of an ingeniously framed complaint alleging a tort.").

### 3.

Appellants invoke an exception to the general rule of preemption of state law tort claims by the federal labor laws illustrated by the Supreme Court case of *Farmer v. United Bhd. of Carpenters & Joiners, Local 25,* 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977). *Farmer* arose under the National Labor Relations Act, but several courts have considered the *Farmer* exception in the context of the RLA. *See, e.g., Lancaster,* 773 F.2d 807; *Minehart v. Louisville & N.R.R.,* 731 F.2d 342 (6th Cir.1984); *Jackson,* 717 F.2d 1045; *Choate,* 715 F.2d 369; *Magnuson,* 576 F.2d 1367. The plaintiff in *Farmer* filed a state court suit claiming intentional infliction of emotional distress. The Court held that the claim was not preempted by the NLRA because of the outrageous nature of the conduct that intentionally inflicted emotional distress. The Court considered the state interest in protecting its citizens from such outrageous conduct and the potential for interference with the federal labor scheme and concluded that preemption was not mandated. As this court noted in *Jackson,* the Supreme Court in *Farmer* stated that the scope of federal preemption must be determined "'by examining the state interests in regulating the conduct in question and the potential for interference with the

federal regulatory scheme.'" *Jackson,* 717 F.2d at 1051 (quoting *Farmer,* 430 U.S. at 297, 97 S.Ct. at 1062).

Appellants argue that *Farmer* lends support to their case because of the "outrageous fraudulent conduct" and "the governmental interest of protecting disabled former railroad employees from being victimized by the fraudulent conduct of the carrier." Appellants' Br. at 15. We disagree. First, *Farmer* does not provide the support for the appellants' argument that they would have it provide. The "outrageous" conduct that the *Farmer* Court relied on in shaping the exception to the rule of preemption is simply lacking in this case. The state does not have the same interest in protecting the appellants here from the alleged fraud and conversion because the alleged duty to pay the medical expenses arises from the collective bargaining agreement via a "course and practice" rather than as an independently recognized state law duty. Second, the potential for interference with the federal labor scheme is too great to allow an exception to preemption. Under the reasoning of *Farmer,* the state tort must be "sufficiently separate from the labor dispute to permit [jurisdiction in the federal district court]." *Choate,* 715 F.2d at 371. This court held in *Choate* that preemption applies if adjudication of the claim would necessarily involve the interpretation of the collective bargaining agreement. *Id.* at 372. Similarly, in *Jackson,* this court held that the *Farmer* exception to the rule of preemption did not apply because "resolution of Jackson's claim requires consideration of the same issues that Jackson would have raised before an administrative tribunal had he pursued the grievance procedures of the collective bargaining agreement and the RLA." *Jackson,* 717 F.2d at 1056.

### C. Conclusion

We hold that the district court was correct in dismissing the appellants' second amended complaint for lack of subject matter jurisdiction because the state law tort

claims are preempted by the RLA.[10]  We therefore affirm the judgment of the district court.

AFFIRMED.

---

**10.**  We also agree with the district court that under the authority of *Pennsylvania R.R. v. Day,* 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422 (1959), appellants, as former employees of appellee railroad were required to submit their claims under the collective bargaining agreement to the statutory administrative grievance procedure.  The Supreme Court stated in *Day:*

> Thus it is plain both from a reading of the Act in light of its purpose and the needs of its administration and from the settled administrative interpretation that the Board has jurisdiction over [the former employee's] claim for compensation.
>
> Since the Board has jurisdiction, it must have exclusive primary jurisdiction.  All the considerations of legislative meaning and policy which have compelled the conclusion that an active employee must submit his claims to the Board, and may not resort to the courts in the first instance, are the same when the employee has retired and seeks compensation for work performed while he remained on active service.

*Id.* at 552, 79 S.Ct. at 1325.