Douglas E. COKER, Sr., and
Susan Coker, Plaintiffs,

v.

TRANSWORLD AIRLINES INC., Cooperative Group Insurance Plan for Employees of TWA Inc., and Transworld Airlines Inc. Retirement Plan, Defendants.

No. 96 C 2360.

United States District Court,
N.D. Illinois,
Eastern Division.

March 13, 1997.

---

Suzanne McCarthy, Chuhak & Tecson, P.C., Chicago, IL, for Plaintiffs.

Thomas James Piskorski, Anna M. Scruggs, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is defendant Transworld Airlines Inc.'s ("TWA"), the TWA Retirement Plan for Mechanics and Related Employees, Dining Service Employees and Passenger Service Employees' ("the Retirement Plan"), and the TWA Group Medical, Dental and Disability Income Benefit Plans' ("the Group Benefit Plans")[1] (collectively, "defen-

---

1. Plaintiffs incorrectly sued the Group Benefits Plans and Retirement Plan as Cooperative Group Insurance Plans for Employees of TWA Inc. and

dants") motion to dismiss all counts of plaintiff Douglas E. Coker, Sr.'s ("Mr. Coker"), and Susan Coker's ("Mrs. Coker") (collectively, "plaintiffs") complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Counts II and III pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which the court can grant relief. For the reasons that follow, the court grants in part and denies in part defendants' motion to dismiss.

## I. *BACKGROUND*

TWA is an interstate carrier subject to the Railway Labor Act ("RLA"). *See* 45 U.S.C. § 151. The RLA requires air carriers and their employees, acting through their unions, to establish System Boards of Adjustment for the resolution of disputes over the interpretation and application of the parties' collective bargaining agreements. 45 U.S.C. § 184. Mr. Coker has worked for TWA for 29 years as a ramp service employee at O'Hare International Airport ("O'Hare") in Chicago, Illinois. He has been a member of the District Lodge 142 of the International Association of Machinists and Aerospace Workers, AFL–CIO ("IAM") since starting at TWA. IAM is a national labor organization authorized to act as a bargaining representative on behalf of workers like Mr. Coker pursuant to the RLA. *See* 45 U.S.C. § 151. During the time period relevant to this opinion, IAM and TWA had entered into and were bound by the terms of a collective bargaining agreement between them.

The Group Benefit Plans provide health, life insurance, temporary disability, long-term disability, and death benefits to eligible employees of TWA and their spouses. The Retirement Plan provides retirement benefits to eligible employees of TWA. As an employee of TWA, Mr. Coker participated in both the Group Benefit Plans and the Retirement Plan. As his spouse, Mrs. Coker was a covered dependent under the Group Benefit Plans.

On September 30, 1992, Mr. Coker was laid off, or furloughed. IAM filed a grievance with the System Board of Adjustment

Transworld Airlines Inc. Retirement Plan, re-

("the Board") established by the TWA–IAM collective bargaining agreement, disputing the furlough on the grounds that TWA had violated its contract with IAM by using American Airlines employees to staff its ground operations.

In early January 1995, plaintiffs received written confirmation from TWA indicating that their medical coverage would be continued under the Group Benefit Plans. During January and February 1995, while Mr. Coker was still furloughed, Mrs. Coker incurred medical expenses from three separate hospital admissions relating to a pre-existing medical condition. Aetna Life Insurance Company ("Aetna"), the Group Benefit Plans' third party administrator, made representations to the hospital that the hospitalizations would be covered under the Plans. Aetna paid nearly the entire amount of the first bill. However, plaintiffs were not reimbursed for either the remainder of the first bill or the subsequent bills.

On March 2, 1995, IAM notified Mr. Coker that the Board had found that TWA was in violation of its obligations under the collective bargaining agreement with respect to O'Hare ramp service employees, including Mr. Coker. The Board's award ordered TWA to reinstate the furloughed ramp service employees at O'Hare, and provided that the employees furloughed effective September 30, 1992, would receive "the rate of pay in effect during their period of furlough, less any outside earnings, compensation, and unemployment insurance." (Brief in Support of Defs'.Mot.Dismiss Ex. 2 at 15). Mr. Coker was reinstated on June 26, 1995, and since then has been covered under TWA's benefit plans.

Mr. and Mrs. Coker sued defendants because of the denial of medical benefits in January and February 1995, alleging federal promissory estoppel and breach of contract claims (Counts I and III, respectively) and a claim for interference with protected rights under the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1140 (Count II).

spectively.

Defendants now move to dismiss all counts for lack of subject matter jurisdiction and Counts II and III for failure to state a claim.

## II. DISCUSSION

### A. Standard for deciding a Rule 12(b)(1) motion to dismiss

The defendants move to dismiss the entire case for lack of subject matter jurisdiction. *See* FED.R.CIV.P. 12(b)(1). Alternatively, defendants move to dismiss Counts II and III for failure to state a claim upon which relief can be granted. *See* FED.R.CIV.P. 12(b)(6). When a party raises subject matter jurisdiction as one of several grounds for dismissal, the court shall first consider the 12(b)(1) motion, as dismissal under this rule renders all other motions for dismissal moot. *See* FED.R.CIV.P. 12(h)(3); *Freiburger v. Emery Air Charter, Inc.*, 795 F.Supp. 253, 256 (N.D.Ill.1992).

The standard of review for a Rule 12(b)(1) motion to dismiss depends upon the purpose of the motion. *See Freiburger*, 795 F.Supp. at 256. If the motion merely challenges the sufficiency of the allegations of subject matter jurisdiction, then the court must accept as true all well-pleaded factual allegations and construe them favorably to the pleader. *Rueth v. United States Environmental Protection Agency*, 13 F.3d 227, 229 (7th Cir. 1993). However, if the motion denies the truth of the allegations, the court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Capitol Leasing Co. v. Federal Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993). Dismissal is proper if it appears beyond doubt that the plaintiff cannot prove any set of facts consistent with the pleadings that would entitle him to the relief requested. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

The issue of whether a statute confers subject matter jurisdiction concerns the sufficiency of the jurisdictional allegations. *Rueth*, 13 F.3d at 229. Because the complaint necessarily implicates the court's jurisdiction under both the RLA and ERISA, the court accepts as true all well-pleaded allegations of plaintiffs' complaint.

### B. Jurisdiction under the RLA

Defendants contend that plaintiffs' entire case must be dismissed because this court lacks jurisdiction over it. Defendants contend that under the RLA, plaintiffs' exclusive remedy lies with the System Board of Adjustment established by the TWA–IAM collective bargaining agreement.

The RLA covers relations between rail and air carriers and their union employees. *Westbrook v. Sky Chefs, Inc.*, 35 F.3d 316, 317 (7th Cir.1994). If a complaint can be read to allege a violation of the RLA itself, rather than the collective bargaining agreement, then 28 U.S.C. § 1337 confers original federal jurisdiction on the federal courts to decide the complaint. *Graf v. Elgin, Joliet & E. Ry. Co.*, 697 F.2d 771, 774 (7th Cir.1983). Otherwise, the RLA attempts to promote stability in labor-management relations by providing mandatory grievance procedures to ensure the "prompt and orderly settlement" of major and minor disputes. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 250–54, 114 S.Ct. 2239, 2243–44, 129 L.Ed.2d 203 (1994).

Major disputes pertain to the "formation of collective [bargaining] agreements or efforts to secure them." *Underwood v. Venango River Corp.*, 995 F.2d 677, 678 (1993) (quoting *Elgin, Joliet & E. Ry. Co. v. Burley*, 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945)), *overruled on other grounds by Westbrook*, 35 F.3d at 317. Minor disputes involve the "interpretation or application of an existing collective bargaining agreement." *Leu v. Norfolk & W. Ry. Co.*, 820 F.2d 825, 828 (7th Cir.1987). Minor disputes include disagreements over the meaning of an award, which are considered disagreements over the "meaning of the underlying collective bargaining agreement." *Brotherhood of Maintenance of Way Employees v. Burlington N. R.R. Co.*, 24 F.3d 937, 938 (7th Cir.1994); *see also Consolidated Rail Corp. v. Railway Labor Executives' Assoc.*, 491 U.S. 299, 302–03, 109 S.Ct. 2477, 2480, 105 L.Ed.2d 250 (1989).

The administrative remedies for minor disputes are exclusive, *Jackson v. Consolidated*

*Rail Corp.,* 717 F.2d 1045, 1051 (7th Cir. 1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984), and judicial review of minor disputes is extremely limited. 45 U.S.C.A. § 153(p); *see also Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978) (Congress intended to keep minor disputes out of the court system). In fact, this scope of review "is among the narrowest in the law." *Brotherhood of R.R. Signalmen v. Louisville & Nashville R.R. Co.,* 688 F.2d 535, 537 (7th Cir.1982). Parties can obtain judicial review in a district court of a Board decision in only three instances: where the Board fails to comply with the requirements of the RLA; where the Board's order fails to conform or confine itself to matters within the Board's jurisdiction; or where a Board member determining the award commits fraud or corruption. *Id.* (citing 45 U.S.C. § 153(p)).

Defendants contend that plaintiffs' cause of action is a minor dispute about benefits bestowed by the collective bargaining agreement, over which the court lacks jurisdiction. The court agrees, at least with respect to Counts II and III.

### 1. Counts II and III

■ In Count II, plaintiffs claim that TWA violated ERISA in that it impermissibly interfered with plaintiffs' rights under TWA's employee benefit plans by placing Mr. Coker on furlough in contravention of the collective bargaining agreement. In Count III, plaintiffs allege that TWA breached the collective bargaining agreement by improperly furloughing Mr. Coker, and as a result of the breach, deprived plaintiffs of their benefits under the Group Benefit Plans and the Retirement Plan during the period of furlough.

Plaintiffs' rights to benefits for the period of time during which Mr. Coker was furloughed existed only through the collective bargaining agreement. (*See* Brief in Support of Defs'.Mot.Dismiss Ex. 1 at 105). In a similar case, the Seventh Circuit held that a railroad's responsibility to pay the medical bills of injured employees and their dependents "arises from the collective bargaining agreement as an incident of the employment relationship." *Leu,* 820 F.2d at 829–30. The court found that the question of whether the railroad had any responsibility to provide medical benefits ultimately required an interpretation of the collective bargaining agreement. *Id.* at 829. The court stated that where " 'the dispute grows out of the employment relationship and, in the final analysis, involves an attempt to impose a right which is incident to that relationship, the statutory forum is the Adjustment Board....' " *Id.* (quoting *Railway Labor Executives Ass'n v. Atchison, Topeka & Santa Fe Ry.,* 430 F.2d 994, 997 (9th Cir.1970), *cert. denied,* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971)). *See also Bowe v. Northwest Airlines, Inc.,* 974 F.2d 101, 103 (8th Cir.1992), *cert. denied,* 507 U.S. 992, 113 S.Ct. 1602, 123 L.Ed.2d 164 (1993) (a claim for disability benefits requires the interpretation or application of a collective bargaining agreement and is thus a minor dispute).

The court finds it impossible to address plaintiffs' contentions in Counts II and III without also having to interpret or apply the collective bargaining agreement. Both counts ask the court to determine whether Mr. Coker's furlough in violation of the collective bargaining agreement deprived him and Mrs. Coker of benefits to which they were entitled. The answer depends on what the collective bargaining agreement provided with respect to employee benefits during or following a furlough.

As in *Leu,* TWA's responsibility to pay medical and other benefits to improperly furloughed employees "arises from the collective bargaining agreement" between TWA and IAM "as an incident of the employment relationship." *Leu,* 820 F.2d at 829–30. Thus, a determination of whether TWA was required to provide medical and other benefits to furloughed employees during the furlough period necessitates an "interpretation or application of" the TWA–IAM collective bargaining agreement. *Id.* at 828.

In addition, Mr. Coker, through his union's grievance, succeeded before the Board, which found the furlough improper and ordered reinstatement and back pay, but said nothing about benefits. (*See* Brief in Supp. of Defs.' Mot.Dismiss Ex. 2 at 15.) Mr. Coker's only

remaining complaint, then, is that he is entitled to benefits as well as reinstatement and back pay. Defendants contend that he is not entitled to the benefits he seeks. Thus, plaintiffs and defendants disagree over the meaning of the Board's award, and therefore disagree "over the meaning of the underlying collective bargaining agreement." *Brotherhood of Maintenance of Way Employees*, 24 F.3d at 938. Furthermore, the Board specifically noted in its decision that it would "retain jurisdiction over this grievance in the event the Parties are unable to resolve any issue arising from this Award." (*See* Brief in Supp. of Defs.' Mot.Dismiss Ex. 2 at 15.)

In sum, Counts II and III effectively ask the court to interpret and apply the TWA–IAM collective bargaining agreement and resolve the parties' disagreement over the Board's award, and therefore over the meaning of the underlying collective bargaining agreement. Consequently, Counts II and III raise minor disputes over which this court lacks jurisdiction.

 Plaintiffs' other arguments do not change the court's opinion. Plaintiffs contend that a provision in ERISA explicitly allows suits about coverage and application of employee benefit plans to be brought in federal court. *See* 29 U.S.C. § 1132(a)(1)(B). However, ERISA was not intended to preempt the mandatory arbitration provisions of the RLA. *Bonin v. American Airlines, Inc.*, 621 F.2d 635, 638 (5th Cir.1980). The Group Benefit Plans' provision referring disputes over benefits to federal district court also does not trump the RLA's jurisdictional rules, because "[p]arties to an agreement cannot create federal subject matter jurisdiction by consent." *Bowe*, 974 F.2d at 101 (citing *Jader v. Principal Mut. Life Ins. Co.*, 925 F.2d 1075, 1077 (8th Cir.1991)). Similar language in an employer's benefits plan has been found not to preempt the RLA. *See Wheeler v. St. Louis Southwestern Ry. Co.*, 90 F.3d 327, 330 (8th Cir.1996).

 Lastly, plaintiffs contend that Counts II and III are really just attempts to enforce their arbitration award, and that arbitration awards are legally enforceable in federal court. *See, e.g., International Ass'n of Machinists, AFL–CIO v. Central Airlines, Inc.,*

372 U.S. 682, 694–696, 83 S.Ct. 956, 963–964, 10 L.Ed.2d 67 (1963). Under the RLA, the party who wins at arbitration is entitled to judicial assistance in enforcing an award. 45 U.S.C. § 153(p) and (q); *see also Brotherhood Ry. Carmen Div., Transp. Communications Int'l Union, AFL–CIO v. Atchison, Topeka and Santa Fe Ry. Co.*, 956 F.2d 156, 157 (7th Cir.1992). However, artful pleading cannot be used to disguise claims that are within the exclusive jurisdiction of the RLA. *Leu*, 820 F.2d at 831; *see also de la Rosa Sanchez v. Eastern Airlines, Inc.*, 574 F.2d 29, 32 (1st Cir.1978) ("Plaintiff here seeks to make an end-run around the jurisdictional scope of [the] RLA by the use of an ingeniously framed complaint alleging a tort.").

As the court already has noted, the Board's award provided for back pay, but failed to mention benefits. Therefore, what plaintiffs actually seek is an interpretation of the award, which is within the Board's exclusive jurisdiction. *See United Food & Commercial Workers Local 100A, AFL–CIO & CLC v. John Hofmeister & Son, Inc.*, 950 F.2d 1340, 1345 (7th Cir.1991) (district courts should remand ambiguous awards to arbitrator).

The RLA is unequivocal in its desire for disputes about Board awards to be resolved by the Board. *See* 45 U.S.C. § 153(m) ("[i]n case a dispute arises involving an interpretation of the award the division of the Board upon request of either party shall interpret the award"). For example, in *American Train Dispatchers Dep't of the Int'l Bd. of Locomotive Eng'rs v. Norfolk S. Ry. Co.*, 857 F.Supp. 1276, 1282 (N.D.Ill.1994), the court denied the union's motion to enforce an award under the RLA, ruling that there was a genuine disagreement between the parties as to the meaning of the award. The court found that it did not have the jurisdiction to define the scope of arbitration awards because these disagreements are minor disputes requiring resolution by arbitration.

Similarly, a court cannot order a company to pay benefits where an award does not specify an amount to be paid. In *Brotherhood Railway*, the railroad and union disagreed over whether the reason a worker's job

was eliminated entitled the worker to severance pay. The Board found that the worker indeed had been terminated for a reason that entitled him to benefits, but did not specify an amount in its award. The Court of Appeals for the Seventh Circuit reversed the district court's order to pay the worker $77,-000, ruling that the union was actually seeking enforcement of its own interpretation of the award and that the district court judge lacked the statutory authority to interpret the award. 956 F.2d at 160 ("the judicial duty to enforce an arbitration award is neither a duty nor a license to interpret it.").

In contrast, the award in this case is quite clear in its meaning. It merely provides for reinstatement and back pay at the rate ramp service employees would have received had they been working. Indeed, the union requested both back pay *and* medical benefits when it presented its case to the Board. (*See* Brief in Supp. of Mot.Dismiss Ex. 2 at 12 ("make-whole relief, including back pay and benefits, should be awarded affected IAM-represented employees")). The Board awarded only back pay, along with reinstatement. (*Id.* at 15.)

In this case, no party asked the Board to interpret the award. Instead, plaintiffs now ask that the court "enforce" the award, implying that no interpretation is necessary. However, like the union in *Brotherhood of Maintenance of Way Employees,* 24 F.3d at 938, plaintiffs are attempting to avoid the RLA provision that disagreement over an award's meaning is a minor dispute that must be resolved by the Board. *See also Consolidated Rail,* 491 U.S. at 302–03, 109 S.Ct. at 2480–81.

The court finds it has no subject matter jurisdiction over Counts II and III.

### 2. Count I

■ Count One is a federal common law promissory estoppel claim.[2] While minor

---

[2]. Courts are split as to whether a federal common law doctrine of promissory estoppel exists under ERISA, because there is some concern that promissory estoppel contradicts the policy against oral modifications of ERISA plans. *See* 29 U.S.C. §§ 1102(a)(1), 1102(b)(3) (ERISA does not recognize the validity of oral or non-conforming written modifications to ERISA plans).

disputes must be resolved under the RLA, the statute does not preempt common law or statutory causes of action that are independent of the collective bargaining agreement. *Hawaiian Airlines,* 512 U.S. at 256–58, 114 S.Ct. at 2246. That is, the RLA does not preempt a state or federal cause of action that involves rights and obligations that exist independent of the collective bargaining agreement. *Id.*

Plaintiffs' promissory estoppel claim alleges essentially that defendants made misrepresentations about plaintiffs' insurance coverage, and that plaintiffs reasonably relied on the misrepresentations to their detriment. Whether defendants misrepresented to plaintiffs material facts about plaintiffs' coverage and whether plaintiffs relied to their detriment on the misrepresentations are unrelated to whether Mr. Coker was improperly furloughed and entitled to benefits during the furlough period under the collective bargaining agreement. Thus, the promissory estoppel claim does not require the court to interpret or apply the collective bargaining agreement, but rather involves rights and obligations that exist independent of the collective bargaining agreement.

Because plaintiffs' promissory estoppel claim is independent of the issue of Mr. Coker's improper furlough and entitlement to benefits under the collective bargaining agreement, defendants' motion to dismiss Count I for lack of subject matter jurisdiction is denied.

Defendants alternatively moved to dismiss Counts II and III for failure to state claims upon which the court can grant relief. Since the court has found that it has no jurisdiction over these counts, the court will not address whether they state claims.

### III. *CONCLUSION*

For the foregoing reasons, the court grants in part and denies in part defendants'

---

However, the Seventh Circuit recognizes that promissory estoppel is part of the common law that courts of appeals are required to create in order to plug gaps in ERISA. *See Miller v. Taylor Insulation Co.,* 39 F.3d 755, 758 (7th Cir.1994) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989)).

motion to dismiss. The court grants defendants' motion to dismiss Counts II and III and dismisses Counts II and III with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction; but the court denies defendants' motion to dismiss Count I.