Herman E. Horkstrom, et al., Plaintiffs-Appellants, v. Stonefort Coal Mining Company, Inc., a Corporation, Thomas Kennedy, as President of the International Union, United Mine Workers of America, John Owens, as Secretary-Treasurer of the International Union, United Mine Workers of America, Hugh White, as President of District 12, United Mine Workers of America, Fred S. Wilkey, as Secretary of the Illinois Coal Operators' Association, and Martha Terleke, as Acting Secretary of the Illinois Coal Operators Association, and Paul Wagher, as President or Former President of Local 7383, International Union, United Mine Workers of America, Defendants-Appellees.

Gen. No. 68–1.

Third District.

February 26, 1969.

Kevin D. Kelly, of LaSalle, and Sidney Karasik, of Chicago, for appellants.

William J. Voelker, Jr., of Peoria, Edmund Burke, of Springfield, Willard P. Owens, of Washington, D. C., and Stuart, Neagle & West, of Galesburg, for appellees.

STOUDER, J.

Plaintiffs (twenty in number) as former employees of Stonefort Coal Mining Company, one of the defendants, brought this action in the Circuit Court of Knox County for a declaration of rights under certain union-management contracts. In the first count of their amended complaint, Stonefort Coal Mining Company, Inc. and Illinois Coal Operators' Association are named as defendants. In the second count, officials of the local district and International Mine Workers Union are named defendants. Each of the defendants moved to dismiss the complaint and such motions were granted by the trial court. The plaintiffs elected to stand on their amended complaint and have appealed from the order of dismissal.

From the complaint, which is quite lengthy in detail, it appears that prior to 1960 Plaintiffs had been employed by Stonefort Coal Mining Company at its mine located in Knox County, Illinois, known as the Little John Mine. In 1960, Stonefort discontinued the operation of the Little John Mine and moved its operation to the Allendale Mine. At the time of transfer of operation, a reduction in work force also took place as a result of which Stonefort discharged plaintiffs and did not transfer them to the new mine. At the time of their discharge and prior thereto, plaintiffs were members of Local 7383, District 12, United Mine Workers of America (referred to as the International Union). The complaint referred to and incorporated by reference, a national union-management contract and a local union-management contract. According to plaintiffs the terms of such contracts were violated because the reduction in working force was on the basis of job classification seniority rather than mine wide seniority. As indicated earlier, plaintiffs have appealed from the order of the trial court dismissing both counts of their amended complaint.

Although the underlying basis of plaintiffs' claims is that their discharge was wrongful under the provisions

of the National and local union-management contracts, the principal issues on this appeal and in the trial court involve the effect of the grievance procedures detailed in the contracts. The contracts provided that all disputes thereunder are to be resolved and settled by the parties and in implementation thereof, a five-step grievance procedure is set forth in great detail. Since the details of the grievance procedure are not involved in this case a general outline of the procedure should suffice. The five-step procedure contemplates that if the dispute is not settled at some prior stage settlement procedures will then advance to the next stage. Step one provides for direct settlement between employees and employer, steps two, three and four involve settlement by joint committees representing employer and local union, employer and district, employer and International respectively, step five provides for binding arbitration.

The dispute was not resolved in accord with the grievance procedures specified and the principal issue on this appeal is plaintiffs' contention that the trial court erred in holding that the allegations of the complaint are insufficient to excuse compliance with the grievance procedure. The first count of the amended complaint alleged plaintiffs' wrongful discharge by their employer Stonefort, asserting first that Stonefort repudiated the grievance procedure and second that plaintiffs were prevented from settling their grievance under the grievance procedure by the wrongful conduct of the union officials. Count two of the amended complaint against the union officials expands the allegation of wrongful conduct of such union officials and is based on a violation of the statutory duty of fair representation owed by the union to its members.

Paragraphs 17 and 18 of the first count of the amended complaint allege in substance that the plaintiffs did present the matter of their discharge to their employer (step one of the grievance procedure) and that their em-

ployer turned down their complaint indicating that the issue was not negotiable. However, it is then alleged in the first count of the complaint that no further steps in the grievance procedure were undertaken because the local union representatives charged with prosecuting step two of the grievance procedure on behalf of plaintiffs wrongfully refused so to do. Thus it appears from the allegations of count one that the employer did not refuse to participate in step two or subsequent steps of the grievance procedure because in fact it was never requested so to do. Under these circumstances we do not believe that the employer can be said to have repudiated the grievance procedure and plaintiffs' claim if any, must be based primarily on its allegations concerning the wrongful conduct of the union officials in failing to prosecute plaintiffs' grievance.

In Webster v. Midland Elec. Coal Corp., 43 Ill App2d 359, 193 NE2d 212, cert denied 377 US 964, which is referred to by the defendants as a companion case because it involved essentially the same issues but a different coal company, the Court rejected arguments similar to those advanced by plaintiffs in the instant case. Plaintiffs insist, the defendants arguing to the contrary, that the conclusions of the court in Webster have been modified by a subsequent decision of the United States Supreme Court in Vaca v. Sipes, 386 US 171, 12 L Ed2d 842, 87 S Ct 903. To the extent that the Vaca case represents a recent extended discussion of the duties owed by a union to its members we believe that a summary of the opinion is appropriate.

In the Vaca case the plaintiff was a member of the meat packers' union. He had been employed by Swift & Company but had been off work because of medical reasons (high blood pressure). Plaintiff attempted to resume his employment after his own treating physician indicated he was able to do so. However the company's physicians concluded otherwise and as a consequence the

plaintiff was discharged. Plaintiff then resorted to the grievance procedure (a five-step procedure similar to that in the instant case) and such procedure advanced to the fourth step thereof, the union representatives aiding plaintiff in the presentation of his grievance. During the fourth step of the grievance procedure, the union representatives after seeking supporting medical evidence, advised plaintiff that he should accept the company's offer of rehabilitation, which he declined. The union representatives thereafter declined either to complete the fourth step of the grievance procedure or to proceed to binding arbitration. Thereafter, plaintiff brought separate actions in a State court of Missouri against the union and the company. Other than filing the action however, no further proceedings were taken against the company and the court had before it only the action against the union. Plaintiff's complaint alleged that the union had "arbitrarily, capriciously and without just or reasonable reason or cause" refused to take his grievance with Swift to arbitration under the fifth step of the bargaining agreement's grievance procedures. A jury trial resulted in a verdict against the union. After review by the courts of review of the State of Missouri the United States Supreme Court reversed the judgment of the trial court.

The holding of the United States Supreme Court in the Vaca case may be summarized as follows. It affirms the principle that a union owes a statutory duty of fair representation toward its members, such duty being derived from the union's power and authority to act as a sole bargaining agent for the bargaining unit. The violation of a union's duty of fair representation may be prosecuted as an unfair labor practice under 29 USC, § 158(b), but such remedy is not exclusive and does not preempt the right of an injured employee to seek redress in the courts. The violation of a union's duty of fair representation is a matter of federal substantive law and

occurs when the union acts arbitrarily or is hostile with respect to alleged grievances of its members or in other words the union acts in bad faith. The facts in the Vaca case were insufficient to support the conclusion that the union acted arbitrarily, with hostility or in bad faith and in this respect the fact that the plaintiff may have been wrongfully discharged does not negate such conclusion. Where there has been a violation of the duty of fair representation, the court, by way of dicta, the employer not being a party to the suit, held that the employer could not urge the failure of the plaintiff to proceed with the grievance procedure as a defense to an action for alleged violation of contract.

In applying the principles of the Vaca decision to the instant case, our principal inquiry is whether there are allegations in the complaint from which it can be fairly inferred that the union or its representatives acted arbitrarily, in bad faith or with hostility toward plaintiffs. It is our conclusion that the trial court decided properly in concluding that no such facts were alleged. In their complaint, plaintiffs, in substance, allege they had several meetings both with local union representatives and the district representative seeking to have their grievance prosecuted by local union representatives under step two of the grievance procedure. The union representatives refused to do so and advised plaintiffs they had no case. Such allegations are not susceptible of any inference that the union representatives were hostile to plaintiffs, that such representatives failed to consider the merits of plaintiffs' grievance or that such representatives acted in bad faith. Nor can the action of the union representatives be regarded as arbitrary merely because their action was favorable to one group of members of the union whose interests were antagonistic to those of plaintiffs.

In Humphrey v. Moore, 375 US 335, 11 L Ed2d 370, 84 S Ct 363, the Court approved the settlement of a grievance involving the merger dovetailing of the seniority

list which resulted when one employer continued a business activity formerly carried out by two employers employing members of the same union. The Court rejected the contention that the union representatives acted dishonestly, arbitrarily or capriciously because such representatives acted favorably on behalf of one group of members of the union who had opposing or antagonistic interest to other members of the union. See also Ford Motor Co. v. Huffman, 345 US 330, 97 L Ed 1048, 73 S Ct 681. Whenever a union is faced with the prospect of reduction in work force, the unavoidable result is that whatever action the union takes will adversely affect one group of its members. This is true whether the union decides to acquiesce in or oppose the action of the employer. Where the union is required to make such decision we do not believe its conduct may be regarded as arbitrary in the sense that it determined upon a course of conduct in bad faith. To hold otherwise would subject the union or its representatives to a charge of improper conduct in every case where a reduction in work force took place and would in effect deprive the union of any significant role in the settlement of such grievance.

For the foregoing reasons the judgments of the Circuit Court of Knox County are affirmed.

Judgments affirmed.

ALLOY, P. J. and SCHEINEMAN, J., concur.