JOSEPH MATZER, Plaintiff-Appellant, *v.* FLORSHEIM SHOE COMPANY *et al.*, Defendants-Appellees.

(No. 53804; 

First District—March 5, 1971.

Norbert Melber, of Evanston, for appellant.

Mayer, Brown & Platt, and Cotton, Watt, Jones, King & Bowlus, both of Chicago, (Irving M. King, of counsel,) for appellees.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

This is an appeal from orders dismissing with prejudice the causes of action against Florsheim Shoe Company (hereinafter "Florsheim") and United Shoe Workers of America Local 51B, Joint Council 25 (hereinafter "Union").

Plaintiff first contends the court erred in dismissing the amended complaint since that complaint did state a cause of action.

The following is a summary of the amended complaint.

Joseph Matzer was employed by Florsheim on or about May 5, 1956, as a punch machine operator pursuant to an oral lifetime contract of employment. Six weeks later plaintiff was required to and did join the United Shoe Workers as a condition of continued employment.

Subsequent, on February 5, 1958, Florsheim and the Union entered into a collective bargaining agreement, pursuant to the applicable provisions of the federal labor statutes, which provided inter alia that the Union was to be the sole collective bargaining agent for all workers employed at Florsheim's Chicago plant, that all workers at such plant were required to be members of the Union, that whenever an employee was discharged for what he felt was lack of good cause he was to notify the Union and that, if the Union concurred that the discharge was without cause, it had to request a grievance meeting with Florsheim within 72 hours after discharge. Unless the Union notified Florsheim within 72 hours that it considered the discharge to be improper, the discharge was considered to be for just cause. The agreement further provided that when any employee was temporarily transferred from his regular work because of lack of work in his regular operation he had the right to accept or refuse such work. If he accepted such work, his compensation would be no less than 88% of his average hourly earnings for the previous calendar year.

On March 1, 1958, Florsheim requested Matzer to transfer from the light beam machine on which he had been working to the heavy beam machine. Matzer, claiming that his health would be impaired, refused such request. Florsheim then requested that Matzer remain at home for an uncertain period of time. The Union was notified of Florsheim's action but did not process any grievance.

After being ill for two weeks, Matzer notified Florsheim that he was ready to return to work as of March 17, 1958, but was told that there was no light beam machine work available. Matzer again complained to the Union but no grievance proceeding was instituted. Then on April 16, 1958, Matzer returned to work and remained continuously employed until August 22, 1958. On August 22, 1958, Matzer became ill and obtained sick leave until October 2, 1958. He then notified Florsheim of

his availability for work and, in late October 1958, he was given work in the hand stitching department until he fully regained his health. However, when Matzer repeatedly requested that he be paid for his work in the hand stitching department at his previously established rate for light beam machine work instead of the lower rate paid in the hand stitching department, he was told on October 27, 1958, not to return to work. Plaintiff notified the Union of his wage dispute and also of his discharge, but the Union refused to process plaintiff's grievance against Florsheim.

The present action was filed by Matzer on February 27, 1968, almost ten years after the termination of his employment at Florsheim, and sought $82,000 in actual damages and $43,000 in punitive damages.

*Opinion*

■■ As to Florsheim, there is no allegation in the complaint that Florsheim ever breached its contract by refusing to follow the grievance procedure. Actually, plaintiff admits in his complaint that no grievance procedure was ever instituted by the Union on his behalf. Therefore, since no breach of contract is shown, the complaint states no cause of action against Florsheim.

■■ As to the Union, the complaint does state that the Union "arbitrarily, capriciously and without just and reasonable reason or cause, and with legal malice" refused to process plaintiff's claim through established grievance procedure. However, plaintiff alleges no facts to support this bald allegation. In *Balowski v. International U., United A., A. & A. Imp. Wkrs.* (6th Cir. 1967), 372 F.2d 829, 835, the court stated:

"The allegations of a complaint alleging the breach of a Union's duty of fair representation must contain more than 'conclusory statements alleging discrimination * * *.'"

We find that the amended complaint did not state a cause of action against the Union. See *Horkstrom v. Stonefort Coal Mining Co., Inc.,* 106 Ill.App.2d 376.

■■ We might also comment on plaintiff's contention that the court erroneously held that his claim was barred by the Statute of Limitations. He argues that as a third party beneficiary of the written contract between Florsheim and the Union, the ten year limitation on written contracts is applicable. (Ill. Rev. Stat. 1967, ch. 83, par. 17.) However, it has been held that when the employee is not named in the written contract and parol evidence is necessary to show the existence of the contractual relationship, the contract upon which employee relies is an unwritten contract. See *Railway Passenger and Freight Conductors Mutual Aid and Benefit Association v. Loomis,* 142 Ill. 560, 32 N.E. 424,

and *Kordewick v. Indiana Harbor Belt R. Co.* (7th Cir. 1946), 157 F.2d 753. Therefore, Section 17 relating to written contracts does not apply.

The orders dismissing with prejudice the causes of action against Florsheim and the Union are affirmed.

Orders affirmed.

LORENZ and SCHWARTZ, JJ., concur.