KENNETH W. MILTON, Plaintiff-Appellant, *v.* ILLINOIS BELL TELEPHONE COMPANY, Defendant-Appellee.

First District (5th Division)    No. 80-1324

Opinion filed October 9, 1981.

Rose M. Urban and Robert Handelsman, both of Robbins, Coe, Rubinstein & Shafran, Ltd., of Chicago, for appellant.

L. Bow Pritchett, Thomas H. W. Sawyer, and Benjamin Ghess, all of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff, Kenneth W. Milton, filed a complaint which alleges that his employer, Illinois Bell Telephone Company, intentionally caused him to

suffer severe emotional distress. The telephone company's motion to dismiss the cause of action was granted by the trial court on the grounds that the alleged conduct was, as a matter of law, not outrageous enough to be actionable. The issues presented by this appeal are: (1) whether the complaint alleges conduct which is outrageous enough to meet the pleading requirements for the tort of intentional infliction of severe emotional distress; (2) whether plaintiff's sole remedy is under either the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.1 *et seq.*) or the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1979, ch. 48, par. 172.36 *et seq.*); and (3) whether plaintiff is required to plead exhaustion of the remedies provided by a collective bargaining agreement. The following allegations are taken from the complaint.

Plaintiff is employed by defendant as a telephone installer. One of his job duties is to complete written reports on the time required, material used, and tasks performed for each installation or repair job. Defendant uses these work reports in billing customers and in compiling reports of corporate expenses for the Illinois Commerce Commission.

Throughout his employment with defendant, plaintiff's foreman and other superiors have allegedly made frequent demands that he falsify these reports. According to the complaint, defendant's officers, executives, and managers know that it is a widespread practice for defendant's foremen to demand that installers falsify work reports. Allegedly, the unrealistic performance goals set by the company, and the failure to act to prevent widespread demands by foremen for falsification of work reports, show that it is defendant's corporate policy to permit, allow, and encourage foremen and others to demand that installers falsify work reports.

Plaintiff claims he has consistently refused to falsify work reports and that, in retaliation, his foreman and other superiors have intentionally harrassed and coerced him through use of the following practices:

(1) Giving plaintiff assignments which were geographically and environmentally more undesirable than the assignments given to installers who cooperated in falsifying work reports;

(2) Giving plaintiff assignments where he had a minimal opportunity for obtaining overtime while giving "more cooperative" installers assignments where there was a high probability of obtaining overtime;

(3) Criticizing plaintiff for complying with company rules and then punishing him for not complying with those rules;

(4) Setting widely unrealistic time estimates for tasks assigned to plaintiff and bouncing him from job to job to wear him out physically and mentally;

(5) Keeping an extraordinarily close watch on plaintiff's work and following him from job to job;

(6) Misleading customers about plaintiff's capability, efficiency, and integrity, plus encouraging customers to report complaints about plaintiff;

(7) Arbitrarily denying plaintiff "distress leave" and "reserve week leave";

(8) Refusing to accept accurate work reports from plaintiff and adding false information to reports he had already completed.

Such retaliation is allegedly a widespread practice used by defendant's foremen and other employees on installers who refuse to falsify work reports. Again it is alleged that these practices constitute a corporate policy which is known by, permitted, allowed, and encouraged by defendant's officers, executives, and managers. The complaint concludes by stating that defendant's conduct has caused plaintiff great mental distress, anguish, and nervous tension requiring hospitalization and medical care.

OPINION

I

■■ ■ To state a cause of action for the tort of intentional infliction of severe emotional distress, plaintiff must allege facts which show that defendant intentionally or recklessly caused plaintiff to suffer severe emotional distress as the result of extremely outrageous conduct. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765.) "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts §46, Comment d (1965); accord, *Public Finance Corp. v. Davis*, at 90.

We agree that, under the holding of *Public Finance*, plaintiff's allegations of retaliatory practices fail to meet the strict pleading requirements which the supreme court indicated should be used to test the sufficiency of a complaint for intentional infliction of severe emotional distress in debt-collection cases. Separately considered, each of the individual allegations of retaliatory conduct either (a) lack sufficient specificity to permit a court to conclude that they fulfill the outrageousness requirement, or (b) do not refer to action which is, by itself, outrageous enough to be actionable in tort.

■■ A defendant's alleged malice or "evil motive" is also not, by itself, sufficient to show the requisite degree of outrageousness. (*Public Finance Corp.*) It is therefore unimportant that defendant is, in essence, accused of some "evil scheme" to defraud the public and mislead the Commerce Commission. However, this does not mean that we can ignore the alle-

gations that repeated demands were made on plaintiff to falsify work reports and that a course of retaliation was inflicted on him for refusing to give in to those demands.

Whatever the claimed motives for the demands and retaliation alleged in the complaint, the question for us is whether it could reasonably be considered extremely outrageous for an employer to intentionally subject an employee to such conduct.

As Dean Prosser pointed out, "The extreme and outrageous nature of the conduct may arise not so much from what is done as from abuse by the defendant of some relation or position which gives him actual or apparent power to damage the plaintiff's interests. The result is something very like extortion." (Prosser on Torts §56 (4th ed. 1971); accord, Restatement (Second) of Torts §46, Comment e (1965), and *Public Finance Corp.*, at 90.) The supreme court recently acknowledged that "relatively immobile workers who often have no other place to market their skills" do not stand on equal footing with the large corporations which employ them. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 129, 421 N.E.2d 876.) It is the alleged abuse of power by a large corporation over one of its front line employees which aggravates the outrageousness of the conduct alleged in this case.

We find *Public Finance Corp.* clearly distinguishable because the defendant in that case was merely exercising legal rights which could not be asserted without causing a certain amount of embarrassment and distress. *Public Finance* was a debt-collection case in which the supreme court evaluated the allegations in light of the finance company's lawful interest in attempting to collect on a defaulted loan. Quoting from the Restatement (Second) of Torts §46, comment g (1965), the supreme court held that the proper rule in such cases is that, "the actor is not liable 'where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistance is certain to cause emotional distress.' A creditor must be given some latitude to pursue reasonable methods of collecting debts even though such methods may result in some inconvenience, embarrassment or annoyance to the debtor." *Public Finance Corp.*, at 92.

In contrast with *Public Finance*, the complaint in this case does not show a defendant which was only insisting on exercising its legal rights. Agents of the defendant in this case allegedly demanded that plaintiff falsify work reports which were used in billing customers. We note that a corporation can be prosecuted for a misdemeanor if (1) the offense was committed by an agent of the corporation (that is, "any director, officer, servant, employee, or other person who is authorized to act in behalf of the corporation") and (2) the "agent of the corporation performs the conduct which is an element of the offense while acting within the scope

of his office or employment and in behalf of the corporation * * *." (Ill. Rev. Stat. 1979, ch. 38, par. 5—4(a), (c).) Therefore, if a corporation's agents knowingly falsified work reports and the corporation used such work reports to overcharge customers, the corporation could be prosecuted for misdemeanor theft. Ill. Rev. Stat. 1979, ch. 38, par. 16—1.

■■ Moreover, it is a Class A misdemeanor for any person to wilfully make a false entry in any account, record, or memoranda which the Illinois Commerce Commission requires a public utility to keep "of all facts in transactions appertaining to the business of the public utility * * *." (Ill. Rev. Stat. 1979, ch. 111 2/3, pars. 17 and 11.) We judicially notice that defendant is a public utility. And we also note that any person who aids or abets a public utility in wilfully making a false report to the Illinois Commerce Commission is guilty of a Class A misdemeanor. Ill. Rev. Stat. 1979, ch. 111 2/3, par. 19.

Obviously the demands for falsified reports and coercive retaliation alleged in this case cannot be equated with a creditor's lawful interest in attempting to collect a bad debt. An employer's interest in demanding that an employee falsify reports, and then retaliating against the employee for not cooperating, is simply not an interest which is entitled to legal deference.

Defendant's argument relies on the appellate court decision in *Palmateer v. International Harvester Co.* (1980), 85 Ill. App. 3d 50, 406 N.E.2d 595, *rev'd* (1981), 85 Ill. 2d 124, 421 N.E.2d 876, but we note that the supreme court decision was filed after defendant submitted its brief in this case. A bit of explanation is required on the continuing validity of an unappealed portion of the appellate court decision.

Palmateer's employment was terminable at will, and International Harvester allegedly fired him because he reported, to the police, a possible theft by a fellow employee, and promised to help the police both investigate and prosecute the offense. The complaint in that case included a count for intentional infliction of severe emotional distress and a count, sounding in tort, for wrongful discharge. .

The appellate court held that it was not tortious for an employer to discharge an "at will" employee for reporting a possible crime to the police. Since the employer had a legal right to fire Palmateer, the appellate court held that this conduct was not outrageous enough to constitute intentional infliction of severe emotional distress.

Only the ruling on the count for wrongful discharge was appealed to the supreme court. Reversing the appellate court's ruling on this count, the supreme court held that the alleged firing violated a clearly mandated public policy and constituted a tort.

Because the rationale used by the appellate court (in ruling on the count for emotional distress) was rejected by the supreme court in ruling

on the count for wrongful discharge, we do not find the appellate court decision persuasive in evaluating the sufficiency of the complaint in this case. Moreover, if employers were permitted to intentionally inflict severe emotional distress on employees who refuse to violate clearly mandated public policies, the protection afforded by the supreme court's decision in *Palmateer* would be undermined.

■■ In this case we conclude that a judge or jury could reasonably find that the coercion and retaliation allegedly suffered by plaintiff was so outrageous, extreme, and atrocious as to be considered intolerable in a civilized community. Therefore plaintiff's complaint meets the requirement of pleading facts which could reasonably be found to amount to extreme outrageousness.

## II

■■ It is also argued that plaintiff's action against his employer is barred by section 5(a) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.5(a)). We need only point out that an employer is required to plead and prove, as an affirmative defense, that an action is barred by section 5(a). *Hindle v. Dillbeck* (1977), 68 Ill. 2d 309, 317-18, 370 N.E.2d 165, 168-69.

■■ A similar argument made by defendant is that plaintiff's action is barred by the exclusive remedy provision of the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1979, ch. 48, par. 172.40). We conclude that, since application of the Workers' Compensation Act must be raised by an employer as an affirmative defense, it necessarily follows that defendant must plead and prove that the Occupational Diseases Act bars this action.

## III

■■ The final argument raised by defendant is that the complaint should be dismissed for failure to plead that plaintiff has exhausted grievance and arbitration procedures provided in a collective bargaining agreement. In essence defendant contends that, in a tort action against his employer, an employee must plead that he has exhausted remedies provided for breach of the contract between his union and his employer.

To support this argument defendant refers us to a series of unfair union representation cases. (See, *e.g.*, *Vaca v. Sipes* (1967), 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903.) The type of action permitted by *Vaca v. Sipes* involves an action against a union for bad faith refusal to process a grievance. Usually the employee also files against his or her employer for breach of the collective bargaining agreement. But because the cause of action against the union is based on its refusal to process a grievance, plaintiff necessarily alleges either an attempt to exhaust the grievance procedures, or pleads one of the exceptions to the exhaustion doctrine.

This, of course, does not mean that the employee must allege exhaustion of contract remedies in the action against the employer. In *Vaca v. Sipes* the United States Supreme Court twice referred to the exhaustion doctrine as *a defense* which might be available to the employer. (386 U.S. 171, 184, 186, 17 L. Ed. 2d 842, 854, 855-56, 87 S. Ct. 903, 913-14, 914-15.) This clearly indicates that, in an action by an employee against his or her employer for breach of a collective bargaining agreement, the exhaustion of remedies doctrine must be raised by the employer as an affirmative defense. Accord, *Miller v. ICX* (N.D. Ill. 1972), 358 F. Supp. 1378. Compare *Miller* with *Horkstrom v. Stonefort Coal Mining Co.* (1969), 106 Ill. App. 2d 376, 246 N.E.2d 128, and *Matzer v. Florsheim Shoe Co.* (1971), 132 Ill. App. 2d 470, 270 N.E.2d 75 (employee has to plead attempted exhaustion when a contract action against the employer is for refusal to follow the grievance procedures).

■■ Except when the contract action against the employer is for refusing to follow grievance procedures, an employer must plead failure to exhaust contract remedies as an affirmative defense to an action brought by an employee for breach of the collective bargaining agreement. Therefore, it necessarily follows that a plaintiff does not have to plead exhaustion of contract remedies in a tort action against his employer.

We, of course, express no opinion on the substantive merits, as applied to the complaint in this case, of a possible defense which has not been raised.

For the preceding reasons the judgment of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.