Delores J. DOUGLAS,
Plaintiff–Appellant,

v.

AMERICAN INFORMATION TECHNOLOGIES CORPORATION, a corporation, also known as Ameritech Company and/or Illinois Bell Telephone Company, Defendant–Appellee.

No. 88–1815.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1988.
Decided June 14, 1989.

Robert Guritz, Illinois Bell Telephone Co., Chicago, Ill., for defendant-appellee.

L. Lee Burks, Jr., Chicago, Ill., for plaintiff-appellant.

Before POSNER and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

Delores J. Douglas appeals from the district court's judgment dismissing her complaint for failure to exhaust her administrative remedies under a collective bargaining agreement. Ms. Douglas initiated this lawsuit by filing a state-law tort action in the Circuit Court of Cook County, Illinois, seeking damages from her employer, the Illinois Bell Telephone Co. (Illinois Bell), for the intentional infliction of emotional distress. Illinois Bell removed this case to federal court under 28 U.S.C. § 1441(a). Illinois Bell asserted that the case was within the original jurisdiction of the district court since it was actually a suit alleging violation of a collective bargaining agreement and was, therefore, a suit arising under section 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a).[1]  After petitioning for removal, Illinois Bell moved to dismiss Ms.

---

1. Section 301 of the LMRA provides:

    (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties.... 29 U.S.C. § 185(a).

Douglas' suit under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Illinois Bell contended that Ms. Douglas has failed to state a claim upon which relief can be granted because she has not satisfied one of the prerequisites of an action under section 301: exhaustion of grievance and arbitration remedies under the collective bargaining agreement. The district court granted Illinois Bell's motion. For the reasons stated in this opinion, we affirm the judgment of the district court.

## I.

### Background

#### A. *Facts*

Ms. Douglas is a customer-service representative with Illinois Bell (a wholly owned subsidiary of American Information Technologies Corp.). With the exception of a three-month separation period in 1976, Ms. Douglas has been employed by Illinois Bell since 1964. She is a member of the International Brotherhood of Electrical Workers (the Union), and the terms and conditions of her employment are governed by a collective bargaining agreement between Illinois Bell and the Union.

On May 29, 1984, Ms. Douglas injured her back on the job. Since the time of the injury, Ms. Douglas has experienced high blood pressure, severe headaches, and an occasional inability to walk without great pain and a pronounced lean. This condition required Ms. Douglas to take disability leave periodically. She last returned from disability leave in July 1986. Ms. Douglas maintains that Illinois Bell was aware of the details of her condition, including the recommendation of her doctors that she limit her work hours by excluding overtime work and that she not participate in voluntary stress-laden work.

Since her return to work in July 1986, Ms. Douglas has consistently refused overtime work and has not participated in "merit or non-merit but highly stressed work." R.1, Ex. I (Douglas Complaint) at ¶ 10. Ms. Douglas' complaint alleges that, in retaliation for her refusal to participate in these activities, the management of Illinois Bell engaged in a series of acts with the intention of inflicting emotional distress upon her. For example, Ms. Douglas maintains that, in April 1987, she was compelled to participate in a type of stress-laden work known as "Helord" (held customer orders dealing with cable facility problems). R.1, Ex. I at ¶ 11. In addition, paragraph 14 of the complaint details a series of wrongs allegedly inflicted upon Ms. Douglas by Illinois Bell management employees. Ms. Douglas maintains that she was:

A. Arbitrarily denied her excused work days (stress relief days). These denials were set out in a grievance that Ms. Douglas filed with her union.

B. Subjected to "constant harassment" until she "strenuously objected" to such treatment. This harassment included denial of the right to use handicap parking, an allegation also included in a union grievance.

C. Forced to draw "undue and undesired attention" to her predicament by being forced to file discrimination charges with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission in order to protect her rights. One of these discrimination charges involved a denial of Ms. Douglas' request to carry "excused days with pay" over into the next year. Ms. Douglas was told that, "under the contract," such days could not be carried over into the next year. Ms. Douglas (a black woman), however, alleged that a white woman employed under the same contract was allowed to carry her excused days with pay over into the next year. *See* R.1, Ex. I (Douglas Complaint Ex. I).

D. Denied the right to visit her doctor when she had "a clear right to do so."

E. Given an unjustified final warning. This allegation was also set out in a union grievance.

F. Subjected to the ordeal of filing numerous grievances to protect her rights.

G. Threatened with firing if she took off for any reason, including a doctor's appointment.

H. Embarrassed when the defendant, "through its conduct," questioned the veracity of a respected physician.

I. Subjected to "unwarranted and excessive" scrutiny of her work. The same scrutiny was not applied to other customer-service representatives in Ms. Douglas' work unit.

J. Subjected to the "exploitation" of her medical condition as set forth in the complaint.

*See* R.1, Ex. I at ¶ 14. Ms. Douglas alleged that all of these acts were "done willfully . . . with the intention to inflict emotional distress upon [her] and/or were done in reckless disregard of the probability of causing [her] emotional distress, and these acts did in fact result in severe and extreme emotional distress." R.1, Ex. I at ¶ 15.

### B. *District Court Opinion*

The district court granted Illinois Bell's motion to dismiss for failure to state a claim and denied Ms. Douglas' motion to remand. Before considering the merits of Illinois Bell's 12(b)(6) motion, the district court addressed the question of whether the case was properly removed to federal court. The court concluded that removal was proper since original jurisdiction pursuant to 28 U.S.C. § 1331 existed. The court agreed with the contention of Illinois Bell that, even though the complaint facially stated a state-law tort claim, Ms. Douglas was actually seeking relief for alleged breaches of the collective bargaining agreement. Employing the analysis enunciated by the Supreme Court in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the court concluded that the claim for intentional infliction of emotional distress was preempted by section 301.

Finally, the district court concluded that Ms. Douglas did not have a viable section 301 claim. Section 301 plaintiffs are required to exhaust their administrative remedies under the collective bargaining agreement. In this case, it is undisputed that Ms. Douglas has indeed failed to exhaust

those remedies: although she has filed a number of grievances concerning the same conduct that is the basis for this action, she has only pursued those grievances through step two of the agreement's three-step grievance and arbitration process. Ms. Douglas sought to excuse this failure by invoking the futility exception to the exhaustion requirement. *See D'Amato v. Wisconsin Gas Co.,* 760 F.2d 1474, 1488 (7th Cir.1985). Rather than explaining why *D'Amato's* futility exception might apply in her case, however, Ms. Douglas' Response to the Defendant's Motion to Dismiss merely repeated the language of the exception. Therefore, the district court dismissed Ms. Douglas' claim for failure to exhaust her remedies under the collective bargaining agreement.

### II.

### Discussion

### A.

In considering Ms. Douglas' appeal, we must first determine whether her state-law claim for intentional infliction of emotional distress is preempted by section 301 of the LMRA. If the claim is preempted, the claim was properly removed to the district court. *See Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 1881 n. 5, 100 L.Ed.2d 410 (1988) (discussing *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and *Caterpillar Inc. v. Williams,* 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). In *Caterpillar,* a unanimous Supreme Court noted that, in cases raising claims under section 301, the Court employs the so-called "complete preemption" doctrine. 482 U.S. at 393, 107 S.Ct. at 2430. Under this approach, the preemptive force of section 301 " 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 65, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987)).[2] As

---

**2.** The "well-pleaded complaint rule" provides

that federal question jurisdiction exists only

the Supreme Court explained in *Caterpillar*, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.; see also Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 24, 103 S.Ct. 2841, 2854, 77 L.Ed.2d 420 (1983) ("[I]f a federal cause of action completely pre-empts a state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."). Thus, state-law claims preempted by section 301 are properly removable to federal court despite a plaintiff's failure to plead explicitly a federal cause of action. *See Lingle*, 108 S.Ct. at 1881 n. 5.[3]

### B.

In determining whether Ms. Douglas' state-based claim for the intentional infliction of emotional distress is pre-empted by section 301, our analysis must be governed by the recent holding of the Supreme Court of the United States in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410

(1988). There, the Supreme Court emphasized that the appropriate approach is a straightforward one: "an application of state law is pre-empted by § 301 ... only if such application requires the interpretation of a collective-bargaining agreement." 108 S.Ct. at 1885. This approach is straightforward because the policy concern requiring preemption in the section 301 context is also straightforward. Federal labor policy mandates that uniform federal law be the basis for interpreting collective bargaining agreements. This policy reduces the possibility "that individual contract terms might have different meanings under state and federal law." *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962). Conflicting interpretations of contract terms "would inevitably exert a disruptive influence" on the collective bargaining process. *Id.*[4]

■■■ However, federal labor policy does not prevent states from providing workers with substantive rights independent of the collective bargaining relationship. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). Indeed, in *Lingle*, the Court made it clear that, so long as a state-law claim can be resolved without in-

---

when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *See Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429; *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13, 57 S.Ct. 96, 97–98, 81 L.Ed. 70 (1936). As the Supreme Court has explained, "[t]he rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar*, 482 U.S. at 392, 107 S.Ct. at 2429.

**3.** Both Ms. Douglas and Illinois Bell (a corporation with its principal place of business in Illinois) are citizens of Illinois. *See* 28 U.S.C. § 1332(c). Because the parties are nondiverse, this action is only removable if it presents a federal question giving the district court original jurisdiction pursuant to 28 U.S.C. § 1331.

**4.** As the Supreme Court emphasized in *Lingle*, "[a]lthough § 301 pre-empts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement, ... it is important to remember that other federal labor law principles may pre-empt state law." *Lingle*, 108 S.Ct. at 1883 n. 8. The National Labor Relations Act (NLRA) may also

preempt state law "on the basis of the subject matter of the law in question." *Id.* at 1883. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–45, 79 S.Ct. 773, 779–80, 3 L.Ed.2d 775 (1959) ("When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the National Labor Relations Act, or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that state jurisdiction must yield.... It is essential to the administration of the [NLRA] that these determinations be left in the first instance to the National Labor Relations Board."). As the Supreme Court pointed out in *Lingle*, in addition to so-called *Garmon* preemption, " '[a] second pre-emption doctrine protects against state interference with policies implicated by the structure of the [NLRA] itself, by pre-empting state law and state causes of action concerning conduct that Congress intended to be unregulated.' " 108 S.Ct. at 1883 n. 8 (quoting *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 749, 105 S.Ct. 2380, 2394, 85 L.Ed.2d 728 (1985)); *see also Lodge 76, Int'l Ass'n of Machinists v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976).

terpreting the agreement itself, the claim is "independent" of the agreement for the purposes of section 301. 108 S.Ct. at 1883. Thus, "§ 301 pre-empts state law only insofar as resolution of the state-law claim requires the interpretation of a collective-bargaining agreement." *Id.* at 1883 n. 8.[5] The mere fact that the state-law analysis might require the state court to focus on the same facts that would control resolution of an employee's contractual remedy is not enough to require preemption of the state-law claim. *Id.* at 1883. If adjudication of the state-law claim does not require a court to interpret any term of a collective bargaining agreement, then that state-law claim is not preempted by section 301. *See id.* at 1881–82 (analysis of the elements of Illinois tort of retaliatory discharge does not require court to interpret collective bargaining agreement).[6]

### C.

Our next step must be to analyze the elements of the state-based cause of action for the intentional infliction of emotional distress so that we may then determine whether adjudication of such a claim would require an interpretation of the collective bargaining agreement. In order to recover damages for the tort of intentional infliction of emotional distress under Illinois law, a plaintiff must establish three elements. First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress. *See McGrath v. Fahey*, 126 Ill.2d 78, 127 Ill. Dec. 724, 727, 533 N.E.2d 806, 809 (1988).[7] Here, our focus must be on the first of these elements.

Illinois courts will only impose liability for the intentional infliction of emotional distress where the defendant's conduct " 'has been so outrageous in character, and

5. The Supreme Court in *Lingle* specifically rejected other formulas for determining section 301 preemption:

> While it may be true that most state laws that are not preempted by § 301 will grant nonnegotiable rights that are shared by all state workers, we note that neither condition ensures nonpre-emption. It is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application. Such a remedy would be pre-empted by § 301. Similarly, if a law applied to all state workers but required, at least in certain instances, collective-bargaining agreement interpretation, the application of the law in those instances would be pre-empted. Conversely, a law could cover only unionized workers but remain unpreempted if no collective-bargaining agreement interpretation was needed to resolve claims brought thereunder.

108 S.Ct. at 1882 n. 7.

6. *See also DeLapp v. Continental Can Co.*, 868 F.2d 1073, 1075 (9th Cir.1989) (plaintiff's state contract claim preempted by § 301 "if any term of the collective bargaining agreement must be interpreted to resolve [plaintiff's] state law claim"); *Shane v. Greyhound Lines, Inc.*, 868 F.2d 1057, 1062 (9th Cir.1989) ("if the presence of the necessary elements of a state claim can be ascertained without recourse to interpretation of the [collective bargaining agreement], the state law remedy is not preempted"); *Rin-*

*tone v. Southern Bell Tel. & Tel. Co.*, 865 F.2d 1220, 1221 (11th Cir.1989) (plaintiff's wrongful discharge claim "involves a factual inquiry that is not 'inextricably intertwined' with any provision of the collective bargaining agreement," and is therefore not preempted by federal law); *Keehr v. Consolidated Freightways, Inc.*, 825 F.2d 133, 137 (7th Cir.1987) (the "crucial issue [in section 301 preemption analysis] is not whether a claim can be taken through the grievance process but whether the state law tort claim being asserted purports to give meaning to the terms of the labor contract.... Because the resolution of [plaintiff's] tort claims in no way depends on an interpretation of the labor contract, we conclude that [his] claims are not preempted by section 301."); *cf. Deford v. Soo Line R.R.*, 867 F.2d 1080, 1086 (8th Cir.1989) (under Railway Labor Act, evaluation of state-law claim is "inextricably intertwined" with consideration of the terms of the labor contract, and the claim is thus preempted, when the state law " 'purports to define the meaning of the contract relationship' ") (quoting *Leu v. Norfolk & W. Ry.*, 820 F.2d 825, 830 (7th Cir.1987) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985))).

7. *See also Farnor v. Irmco Corp.*, 73 Ill.App.3d 851, 29 Ill.Dec. 894, 898, 392 N.E.2d 591, 595 (1979); *Debolt v. Mutual of Omaha*, 56 Ill.App. 3d 111, 13 Ill.Dec. 656, 658, 371 N.E.2d 373, 375 (1978).

so extreme in degree, as to go beyond all possible bounds of decency.'" *Public Fin. Corp. v. Davis*, 66 Ill.2d 85, 4 Ill.Dec. 652, 654, 360 N.E.2d 765, 767 (1976) (quoting Restatement (Second) of Torts § 46 comment d (1965)).[8] Trivial hurts to which the plaintiff overreacts and the slight hurts that individuals must endure in a complex society, however, do not constitute extreme and outrageous conduct. *See Farnor v. Irmco Corp.*, 73 Ill.App.3d 851, 29 Ill.Dec. 894, 898, 392 N.E.2d 591, 595 (1979) (discussing *Bureau of Credit Control v. Scott*, 36 Ill.App.3d 1006, 345 N.E.2d 37, 39 (1976). In addition, the Supreme Court of Illinois has explained that "the extreme and outrageous character of the conduct may arise from the abuse of a position or a relation with another which gives the actor actual or apparent authority over the other or power to affect his interests." *Davis*, 4 Ill.Dec. at 654, 360 N.E.2d at 767.[9] Special relationships in which an actor might have authority that could be abused in a manner adversely affecting another's interests include that of debtor to creditor, *see Davis*, 4 Ill.Dec. at 654, 360 N.E.2d at 767, and landlord to tenant, *see Farnor*, 29 Ill.Dec. at 899, 392 N.E.2d at 596. "Extreme and outrageous" conduct can also arise from abuse of the employer-employee relationship such as the one present in this case. *See, e.g., McGrath*, 127 Ill.Dec. at 728, 533 N.E.2d at 810 (" '[i]t is the alleged abuse of power by a large corporation over one of its front line employees which aggravates the outrageousness of the conduct alleged in this case' ") (quoting *Milton v. Illinois Bell Tel., Inc.*, 101 Ill.App.3d 75, 56 Ill.Dec. 497, 500, 427 N.E.2d 829, 832 (1981)). However, an actor will not be held liable for the intentional infliction of emotional distress " 'where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that

such insistence is certain to cause emotional distress.' " *Davis*, 4 Ill.Dec. at 655, 360 N.E.2d at 768 (quoting Restatement (Second) of Torts § 46 comment g (1965)); *cf. McGrath*, 127 Ill.Dec. 728, 533 N.E.2d at 810 (the defendant's reasonable belief "that his objective was legitimate … is a substantial factor in evaluating the outrageousness of his conduct").

### D.

█ With this understanding of the tort of intentional infliction of emotional distress, we can now address whether, in light of the Supreme Court's mandate in *Lingle*, Ms. Douglas' claim is preempted by section 301. As the Court of Appeals for the Ninth Circuit has noted, determining whether the tort of intentional infliction of emotional distress is preempted by section 301 is indeed a very different task from the one presented in *Lingle* with respect to a retaliatory discharge claim. *See Miller v. AT & T Network Sys.*, 850 F.2d 543, 550 (9th Cir.1988). In *Lingle*, the Court concluded that analysis of the elements of the plaintiff's retaliatory discharge claim did not require a court to interpret any term of a collective bargaining agreement. However, analysis of an employee's intentional infliction of emotional distress claim may well require a court to refer to and interpret the contract provisions governing the terms and conditions of her employment. Specifically, a court's determination of whether the defendant's allegedly wrongful conduct was "extreme and outrageous" may turn on the meaning of various provisions of the collective bargaining agreement.

While the "extreme and outrageous" character of certain sorts of employer conduct may be evident without reference to the terms of a collective bargaining agreement, *see Keehr v. Consolidated Freight-*

**8.** *See also McGrath*, 127 Ill.Dec. at 727, 533 N.E.2d at 809 ("'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.'") (quoting Restatement (Second) of Torts § 46 comment j (1965)).

**9.** *See also McGrath*, 127 Ill.Dec. at 730, 533 N.E.2d at 812 (defendants' conduct could easily

be deemed outrageous by a jury "in view of the apparent economic power which defendants exercised over plaintiff, in view of the alleged total lack of any legal justification for the objective which defendants were attempting to achieve, and in view of defendants' alleged knowledge of plaintiff's special susceptibility").

*ways, Inc.,* 825 F.2d 133, 137–38 (7th Cir. 1987),[10] the conduct that Ms. Douglas must prove to be "extreme and outrageous" in order to assert successfully her claim concerns directly the terms and conditions of her employment. There is no dispute between the parties that such matters are governed by the collective bargaining agreement between the Union and Illinois Bell. For example, Ms. Douglas alleges that Illinois Bell arbitrarily denied her excused work (stress relief) days. Her right to such excused work days presumably grows out of the contract. Similarly, Ms. Douglas alleges that Illinois Bell "forced" her to file discrimination charges in order to protect her right to carry "excused days with pay" over from one year to the next. In those charges she stated that she had been told that, "under the contract," such days could not be carried over into the next year. In addition, Ms. Douglas alleges that Illinois Bell gave her an "unjustified" final warning and subjected her to "unwarranted and excessive" scrutiny of her work.

Resolution of Ms. Douglas' claim will require a court to interpret the collective bargaining agreement in order to determine whether or not Illinois Bell's allegedly wrongful conduct was authorized under the collective bargaining agreement. For example, a court cannot determine whether Illinois Bell gave Ms. Douglas an "unjustified" final warning or subjected her to "unwarranted" scrutiny without first determining what sort of warning or level of scrutiny the parties have agreed is justified or warranted. *Cf. Allis–Chalmers,* 471 U.S. at 217, 105 S.Ct. at 1914 ("[U]nder

Wisconsin law it appears that the parties to an insurance contract are free to bargain about what 'reasonable' performance of their contract obligation entails. That being so, this tort claim is firmly rooted in the expectations of the parties that must be evaluated by federal contract law."). If Illinois Bell's conduct with regard to these matters was authorized under the collective bargaining agreement, then it would have been exercising its "legal rights in a permissible way." Such conduct cannot be characterized as "extreme and outrageous" under Illinois tort law. *See Davis, supra; see also Miller,* 850 F.2d at 550 ("[a]ctions that the collective bargaining agreement permits might be deemed reasonable [and therefore not "extreme and outrageous"] in virtue of the fact that the [collective bargaining agreement] permits them.").

In addition, the fact that a particular provision of the collective bargaining agreement may not explicitly address the conduct underlying Ms. Douglas' complaint does not mean that resolution of an intentional infliction of emotional distress claim does not require interpretation of the agreement. The words of the contract are, of course, the foundation of the parties' bargain. But those words must be interpreted. *See International Ass'n of Machinists, Lodge No. 1000 v. General Elec. Co.,* 865 F.2d 902, 906 (7th Cir.1989). Thus, the parties' contractual obligations regarding the terms and conditions of the employment relationship need not be reduced to the words "expressly recited in the agreement." *Allis–Chalmers,* 471 U.S. at 214, 105 S.Ct. at 1913.[11] The collective bargaining agreement is more than a document

10. In *Keehr,* one of the defendant's employees made a vulgar, sexually explicit remark about the plaintiff's wife. The plaintiff alleged that the defendant instructed its supervisors to make crude and vulgar remarks about the plaintiff's family in order to cause him distress and to provoke him into throwing a punch at the supervisor, thus giving the defendant a basis to discharge the plaintiff. We concluded that the plaintiff's intentional infliction of emotional distress claim was not preempted by section 301 because resolution of the claim did not depend on an interpretation of the labor contract. We also noted that the plaintiff's claim "revolved around conduct by his employer that is not even arguably sanctioned by the labor contract." 825 F.2d at 138 n. 6; *see also Miller v. AT & T*

*Network Sys.,* 850 F.2d 543, 550 n. 5 (9th Cir. 1988).

11. *See also International Bhd. of Elec. Workers v. Hechler,* 481 U.S. 851, 862, 107 S.Ct. 2161, 2168, 95 L.Ed.2d 791 (plaintiff's state-law claim preempted where, "[i]n order to determine the Union's tort liability, ... a court would have to ascertain, first whether the collective bargaining agreement in fact placed an *implied duty* of care on the Union ..., and second, the nature and scope of that duty") (emphasis supplied); *cf. Caterpillar,* 482 U.S. at 394, 107 S.Ct. at 2430 ("Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agree-

containing specific contract provisions: "it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). "There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties.... [T]he governmental nature of the collective-bargaining process demand[s] a common law of the shop which implements and furnishes the context of the agreement." *Id.* at 579–80, 80 S.Ct. at 1351–52 (quoting Cox, *Reflections Upon Labor Arbitration*, 72 Harv.L.Rev. 1482, 1498–99 (1959)). This "industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *Id.* at 581–82, 80 S.Ct. at 1352–53. Moreover, "[t]he assumption that the labor contract creates no implied rights is not one that state law may make." *Allis–Chalmers*, 471 U.S. at 215, 105 S.Ct. at

1913. Whether the words of the collective bargaining agreement create any implied rights that might govern the alleged misconduct upon which Ms. Douglas' claim is based is a "question of federal contract interpretation." *Id.* Such questions must be resolved by references to "uniform federal law." *Id.* at 211, 105 S.Ct. at 1911.[12]

Because Ms. Douglas' intentional infliction of emotional distress claim consists of allegedly wrongful acts directly related to the terms and conditions of her employment, resolution of her claim will be substantially dependent on an analysis of the terms of the collective bargaining agreement under which she is employed. A court will be required to determine whether her employer's conduct was authorized by the explicit or implicit terms of the agreement. Therefore, we hold that Ms. Douglas' state-law claim is preempted and must be pursued as a section 301 claim.[13]

E.

■ Because we have determined that Ms. Douglas' claim for intentional infliction

ment.'") (quoting *Hechler*, 481 U.S. at 859 n. 3, 107 S.Ct. at 2167 n. 3).

12. *See also Leu v. Norfolk & W. Ry.*, 820 F.2d 825 (7th Cir.1987). In *Leu*, a case discussing preemption of a state-law claim by the Railway Labor Act, we recognized that interpretation of a collective bargaining agreement sometimes goes beyond the examination of the words of specific contractual provisions. The plaintiffs in *Leu* asserted a state-law claim based on the employer-railroad's alleged responsibility to pay the medical expenses of injured employees. This responsibility allegedly arose not from any specific contractual provision, but from the employer's "course and practice." We explained that, if such a responsibility existed, it arose "from the collective bargaining agreement as an incident of the employment relationship." *Id.* at 829. Even if the employer's responsibility arose from a "'course and practice' ... rather than from a specific provision of a collective bargaining agreement, the question of whether that responsibility exists at all requires an interpretation of the collective bargaining agreement." *Id.* Thus, resolution of a claim based on a right allegedly arising from the "course and practice" of the railroad "necessarily requires an interpretation of the collective bargaining agreement in light of the alleged 'course and practice.'" *Id.; see also id.* at 830 ("The key inquiry ... is 'whether evaluation of the tort claim is inextricably intertwined with consider-

ation of the terms of the labor contract. If the state tort law purports to define *the meaning of the contract relationship*, that law is pre-empted.'") (quoting *Allis–Chalmers*, 471 U.S. at 213, 105 S.Ct. at 1912) (emphasis supplied).

13. *See also Shane*, 868 F.2d at 1063 (intentional infliction of emotional distress claim preempted where it was "essentially a claim 'that administration of discipline was improper under the standards set by the collective bargaining agreement[ ]'") (quoting *Truex v. Garrett Freightlines, Inc.*, 784 F.2d 1347, 1350 (9th Cir.1985)); *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1149 (9th Cir.1988) (emotional distress claim preempted because resolution of claim would require court to decide whether plaintiff's discharge was justified under the terms of the collective bargaining agreement); *Knafel v. Pepsi Cola Bottlers*, 850 F.2d 1155, 1162 (6th Cir. 1988) (employee brought state-law tort claim alleging that her job assignments and supervisors' comments were intended to inflict harm upon her; court held claim preempted because employee was protected by a collective bargaining agreement that, *inter alia*, "impose[d] restrictions on her employer regarding working conditions and transfer of employees"); *Hyles v. Mensing*, 849 F.2d 1213, 1216 & n. 3 (9th Cir. 1988) (emotional distress claim preempted where collective bargaining agreement specifically covered the conduct underlying plaintiff's complaint).

of emotional distress is preempted by section 301, we must now determine whether the district court correctly dismissed the claim for failure to exhaust grievance and arbitration remedies available under the collective bargaining agreement. As the district court noted, it is undisputed that Ms. Douglas did not exhaust the available remedies. Before the district court, Ms. Douglas submitted, in conclusory fashion, that she was excused from exhausting those remedies because it would have been futile for her to do so. The district court rejected her argument on the ground that her mere unsupported assertion of futility was insufficient to raise the issue properly. We believe that the district court properly disposed of the claim. On appeal, Ms. Douglas points out that, in her memorandum to the district court, she cited a paragraph of the complaint and an exhibit which, in her view, ought to have alerted the district court to the basis for her summary assertion. The submission in the district court was totally inadequate. It was Ms. Douglas' obligation to set forth the basis of her assertion with sufficient specificity to permit the district court to understand her position. *See Libertyville Datsun Sales v. Nissan Motor Corp.*, 776 F.2d 735, 737 (7th Cir.1985). She did not fulfill that obligation.

Moreover, even if she did encounter bias at the lower echelons of the grievance process, she offers no explanation as to why she did not pursue the matter to the higher levels of arbitration available under the collective bargaining agreement.

### Conclusion

Ms. Douglas' intentional infliction of emotional distress claim is preempted by section 301 of the LMRA. The district court therefore properly treated the claim as a section 301 claim and properly dismissed for failure to exhaust the grievance and arbitration remedies provided by the contract. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.